THE STATE OF OHIO, APPELLEE, *v.* LOTT, APPELLANT.

[Cite as State *v.* Lott (1990), 51 Ohio St. 3d 160.]

(No. 89-846—Submitted March 27, 1990—Decided June 6, 1990.)

*John T. Corrigan,* prosecuting attorney, and *Carmen M. Marino,* for appellee.

*David L. Doughten* and *Patricia Walsh,* for appellant.

WRIGHT, J. Gregory Lott appeals his convictions and sentence of death. We have reviewed Lott's seventeen propositions of law, independently balanced the aggravating circumstance against the mitigating factors, and evaluated the proportionality of the sentence to those imposed in similar cases. As a result, we affirm the convictions and sentence of death.

## I

### Joinder of Offenses

In his initial proposition of law (I), Lott claims he was deprived of due process through the joinder of the 1983 aggravated burglary and petty theft offenses with the 1986 offenses against John McGrath. Lott contends that the 1983 offenses were unrelated to the 1986 offenses and prejudiced his cause. He contends as well that evidence of the 1983 offenses was also inadmissible, since it fell under the "other acts" portion of Evid. R. 404(B). The state responds that Lott could not have been prejudiced by joinder and that Lott also waived any error by not requesting severance.

We turn first to Lott's assertions of prejudice through joinder. Before trial began Lott faced serious charges relating to crimes against five victims besides McGrath. At Lott's June 1987 pretrial hearing, the state agreed to press only the McGrath offenses in a single trial. Defense counsel was fully apprised of Lott's position and made the deliberate tactical decision to proceed in a single trial.

The law favors joining multiple offenses in a single trial under Crim. R. 8(A) if the offenses charged "are of the same or similar character." *State* v. *Torres* (1981), 66 Ohio St. 2d 340, 20 O.O. 3d 313, 421 N.E. 2d 1288. While joinder is a viable trial procedure, an accused may move to sever under Crim. R. 14 upon a showing of prejudice. For an appellate court to reverse a trial court ruling denying severance, the defendant must demonstrate that the trial court abused its discretion.

"A defendant * * * under Crim. R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial." *State* v. *Torres, supra,* at syllabus.

A prosecutor can use two methods to negate such claims of prejudice. Under the first method, the "other acts" test, the state argues that it could have introduced evidence of the 1983 crimes under the "other acts" portion of Evid. R. 404(B), if the 1983 and 1986 offenses had been severed for trial. See *Bradley* v. *United States* (C.A.D.C. 1969), 433 F. 2d 1113, 1118-1119. Under the second method, the "joinder" test, the state is not required to meet the stricter "other acts" admissibility test, but is merely required to show that evidence of each crime joined at trial is simple and direct. *State* v. *Roberts* (1980), 62 Ohio St. 2d 170, 175, 16 O.O. 3d 201, 204, 405 N.E. 2d 247, 251; *State* v. *Torres, supra,* at 344, 20 O.O. 3d at 315, 421 N.E. 2d at 1291. Thus, when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as "other acts" under Evid. R. 404(B). *State* v. *Roberts, supra; State* v. *Torres, supra; United States* v. *Catena* (C.A. 3, 1974), 500 F.

2d 1319, 1325-1326, certiorari denied (1974), 419 U.S. 1047.

The trial court joined the 1983 aggravated burglary and petty theft charges with the 1986 charges, as "similar" offenses under Crim. R. 8(A). Such joinder was proper because Lott had burgled the same house and stolen from the same victim in 1983. Indeed, the facts of the 1983 offenses were simple and direct. *State* v. *Roberts, supra; State* v. *Torres, supra.* It is beyond credibility that the panel of judges would be confused by the offenses or would improperly cumulate evidence of the various crimes. See *State* v. *Brooks* (1989), 44 Ohio St. 3d 185, 542 N.E. 2d 636. In fact, Lott fails to explain how he would have defended differently if the 1983 offenses had been severed. See *Drew* v. *United States* (C.A.D.C. 1964), 331 F. 2d 85, at 88, 90-92.

Moreover, the plain error rule applied to Lott's objection to joinder raised now but waived at trial. As stated, Lott's defense counsel, with Lott's full knowledge, made the tactical decision to proceed, without objection, with a single trial on all charges relating to McGrath. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State* v. *Long* (1978), 53 Ohio St. 2d 91, 7 O.O. 3d 178, 372 N.E. 2d 804, paragraph three of the syllabus. See, also, *State* v. *Wolery* (1976), 46 Ohio St. 2d 316, 75 O.O. 2d 366, 348 N.E. 2d 351. Since our independent review of the record reveals neither reversible error nor a manifest miscarriage of justice we find Lott's objections to such joinder to be without merit.

## II
### Evidence of Instrumentalities

In proposition II, Lott argues plain error and deprivation of due process rights by the admission of evidence concerning a telephone cord and bottle of lamp oil found near McGrath, evidence which Lott asserts was irrelevant and prejudicial.

The state clearly showed the relevance of the telephone cord. The cord that police found lying next to McGrath was unusual, indeed out of place. One end was torn and frayed; the other end had a telephone plug on it. Police could not link this cord to any telephone in the house. The deputy coroner saw crusted abrasions on McGrath's ankle and wrist. Additionally, the ambulance run report noted a blue telephone extension cord looped around the patient's hand. Such evidence does not depend on what McGrath said, but what ambulance personnel saw, as is clear from the context of the evidence.

The state could hardly have shown the relevance of the lamp oil more clearly. The victim suffered second degree burns over twelve to eighteen percent of his body — burns from a fire, not chemicals. Yet, aside from some charred drapes, there was no evidence of a fire. McGrath himself clearly had been set ablaze; he was fuel for the fire. The instrumentality to explain this was within an arm's length — an open bottle of flammable lamp oil. Police found no matches or lighter, and no kerosene heater in the house to explain the lamp oil.

These nearby instruments of violence, the telephone cord and lamp oil, tended to prove the charged aggravated offenses of burglary, robbery, arson and murder. Evid. R. 401. Lott had no basis to object to admission of this evidence at trial and did not do so. Having failed to object to their admissibility, Lott now claims due process violations and plain error. Those claims lack merit. There was no miscarriage of justice and any error

was waived. *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364, vacated on other grounds (1978), 438 U.S. 911; *State* v. *Long, supra; State* v. *Wolery, supra.*

### III
### Prosecutorial Misconduct — Trial

In propositions III and IV, Lott asserts that the prosecutor by his misconduct violated Lott's various federal constitutional rights, particularly his right to due process. The state denies misconduct, argues waiver through lack of defense objections, and maintains that Lott was not prejudiced. Lott correctly argues that the prosecutor erred, but he fails to demonstrate prejudice.

Proposition III concerns the prosecutor's reference to evidence the court had previously rejected. The state offered into evidence a post-arraignment, August 12 statement by Lott that was secured in the absence of counsel. The court suppressed this evidence at a hearing during trial. The state moved to delete the term "kidnapping" from the aggravated murder charge and death penalty specification. Those charges alleged aggravated robbery, aggravated burglary *and* kidnapping. In so doing, the prosecutor repeatedly referred to Lott's pretrial statement that had already been suppressed as the source of evidence to prove kidnapping: "* * * [P]aragraphs 4, 5 and 6 tell what was done to restrain his [the victim's] freedom." "* * * [W]e could have proved the kidnapping very easily based on the statement." Despite defense objections, the court granted the motion to amend by deleting "kidnapping."

Lott describes the prosecutor's motion to amend as a thinly veiled attempt to inject the contents of the suppressed statement into the case. In response, the state correctly points out the need for the amendment, since the indictment's language in the conjunctive might have required proof of robbery, burglary *and* kidnapping.

In proposition IV, Lott complains of remarks by the prosecutor during closing argument which repeatedly referred to hearsay statements in the victim's medical records. Some examples will suffice: "In the record he says that he was tied up and burned by somebody." "I'm telling you that the man was tied up and burned to death * * *." "It is not a theory. What happened was that someone tied him up and burned him to death." Lott also accuses the prosecutor of attempting to inflame the trier of fact to reach a verdict based on sympathy for the victim.

The test for prosecutorial misconduct is whether remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused. *State* v. *Smith* (1984), 14 Ohio St. 3d 13, 14-15, 14 OBR 317, 318-319, 470 N.E. 2d 883, 885-886; *United States* v. *Dorr* (C.A. 5, 1981), 636 F. 2d 117, 120, citing *United States* v. *Garza* (C.A. 5, 1979), 608 F. 2d 659, 663. "* * *[T]he prosecution is entitled to a certain degree of latitude in summation, * * *" *State* v. *Liberatore* (1982), 69 Ohio St. 2d 583, 589, 23 O.O. 3d 489, 493, 433 N.E. 2d 561, 566. Indeed, "[i]n the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." *State* v. *Stephens* (1970), 24 Ohio St. 2d 76, 82, 53 O.O. 2d 182, 185, 263 N.E. 2d 773, 777.

However, the United States Supreme Court had this to say about the role of a United States Attorney:

"* * * [H]e is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor — indeed he should do so.

But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger* v. *United States* (1935), 295 U.S. 78, 88.

These comments apply with equal force to Ohio prosecuting attorneys. Prosecutors must avoid insinuations and assertions calculated to mislead. They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence. See *State* v. *Smith, supra,* at 14, 14 OBR at 319, 470 N.E. 2d at 885; *State* v. *Liberatore, supra.*

We have previously noted: "Where opinions [on guilt] are expressed on facts outside the evidence, or are predicated on inferences based on facts outside the evidence, such opinions have not been countenanced and the judgments in those cases have been reversed upon appeal." *State* v. *Stephens, supra,* at 83, 53 O.O. 2d at 186, 263 N.E. 2d at 777. However, where the reference to matters outside the record is short, oblique, and justified as a reply to defense arguments and elicits no contemporaneous objection, there is no prejudicial error. *State* v. *Watson* (1969), 20 Ohio App. 2d 115, 49 O.O. 2d 152, 252 N.E. 2d 305, paragraph two of the headnotes, sentence modified (1971), 28 Ohio St. 2d 15, 57 O.O. 2d 95, 275 N.E. 2d 153.

In this case, the court of appeals held that the prosecutor improperly referred to Lott's rejected pretrial statement. However, the prosecutor did legitimately move to amend the specification to delete kidnapping. He simply used that opportunity to repeatedly allude to the contents of Lott's statement.

The prosecutor also improperly injected hearsay statements from the hospital records during closing argument, mostly in response to court questions. Though the statements had been admitted, and the parties had stipulated to their authenticity, the court had declined to consider hearsay therein. By repeatedly referring to evidence not accepted by the court and expressing his strong personal opinion about the accused's guilt, the prosecutor exceeded reasonable limits of propriety.

Even so, as then Justice Rehnquist noted for the United States Supreme Court, "[t]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith* v. *Phillips* (1982), 455 U.S. 209, 219. *State* v. *Johnson* (1989), 46 Ohio St. 3d 96, 102, 545 N.E. 2d 636, 642.

"* * * [G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial. * * * [Citations omitted.] * * *

"* * * [I]t is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless including most constitutional violations." *United States* v. *Hasting* (1983), 461 U.S. 499, 508-509, certiorari denied (1985), 469 U.S. 1218.

In this case, the record does not show that the trial court afforded any weight whatever to the prosecutor's remarks about the excluded pretrial statement or to hearsay in the hospital records when the court decided this case. The normal presumption in a bench trial applies. It appears that the court " "* * * considered only the rele-

vant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" *State* v. *Post* (1987), 32 Ohio St. 3d 380, 384, 513 N.E. 2d 754, 759, certiorari denied (1988), 484 U.S. 1079, quoting *State* v. *White* (1968), 15 Ohio St. 2d 146, 151, 44 O.O. 2d 132, 136, 239 N.E. 2d 65, 70.

Moreover, although the prosecutor repeatedly referred to the defendant's suppressed pretrial statement, he did so obliquely. See *State* v. *Watson*, *supra*. As for the hospital records, the trial panel explicitly stated after the prosecutor's arguments that they would not and did not consider the hearsay statements therein.

Lott received a fair trial before trained jurists despite this prosecutorial misconduct. The trial court suppressed evidence, sustained defense objections, and granted defense motions — all in an effort to be scrupulously fair. As for the claim that the prosecutor inflamed the passions of the trial judges, the judges closely questioned the prosecution in final argument. Their questioning and the record negate any claim of a verdict resulting from passion. Lott's assertions of prejudice from prosecutorial misconduct fail completely.

Lott's failure at trial to object to the prosecutorial remarks also waived any error. *State* v. *Johnson*, *supra;* *Snyder* v. *Stanford* (1968), 15 Ohio St. 2d 31, 44 O.O. 2d 18, 238 N.E. 2d 563. There was no miscarriage of justice and no plain error. *State* v. *Long*, *supra*.

## IV
### Insufficiency of Evidence

In proposition V, Lott argues the constitutional insufficiency of evidence. Lott asserts that the circumstantial evidence against him does not exclude every other reasonable hypothesis except that of guilt. Lott contends the prosecution built inference upon inference and that purposeful intent to kill was not established. He argues that McGrath's injuries may have been caused by careless smoking. With regard to robbery, he claims that any theft may not have been contemporaneous with force. As to burglary, he cites possible consensual entry.

Lott speculates on very remote possibilities. His speculations do not justify setting aside the lower court's verdict. See *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132; *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212.

It is true that the trial court convicted Lott on circumstantial evidence. "But direct evidence of a fact is not required. Circumstantial evidence * * * may also be more certain, satisfying and persuasive than direct evidence." *Michalic* v. *Cleveland Tankers, Inc.* (1960), 364 U.S. 325, 330, citing *Rogers* v. *Missouri Pacific RR. Co.* (1957), 352 U.S. 500, 508, fn. 17. Murder convictions and death sentences can rest solely on circumstantial evidence. *State* v. *Apanovitch* (1987), 33 Ohio St. 3d 19, 514 N.E. 2d 394; *State* v. *Nicely* (1988), 39 Ohio St. 3d 147, 151, 529 N.E. 2d 1236, 1239. "Circumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt." *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, 66 O.O. 2d 351, 309 N.E. 2d 897, syllabus. Accord *State* v. *Stuttler* (1961), 172 Ohio St. 311, 16 O.O. 2d 101, 175 N.E. 2d 728; *State* v. *Johnston* (1988), 39 Ohio St. 3d 48, 529 N.E. 2d 898.

However, "* * * once the jury has reached its decision, an appellate court, in a case where circumstantial evidence is relied upon, will reverse

only where the evidence is insufficient as a matter of law to enable the jury to exclude a reasonable hypothesis of innocence." *State* v. *Graven* (1978), 54 Ohio St. 2d 114, 119, 8 O.O. 3d 113, 116, 374 N.E. 2d 1370, 1374. While inferences cannot be built on inferences, several conclusions can be drawn from the same set of facts; and a series of facts and circumstances can be used as a basis for ultimate findings. *Hurt* v. *Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 58 O.O. 122, 130 N.E. 2d 820.

In this case, the prosecution proved beyond dispute the existence of certain highly probative circumstantial evidence. Lott was indisputably linked to the victim's home by Lott's unexplained possession of the victim's car, by Lott's fingerprints at two separate locations in McGrath's home, and by a shoeprint on the floor of the victim's house consistent with Lott's gym shoes. From these facts and from other physical evidence of the scene established by the prosecution, there was sufficient probative evidence from which reasonable minds could conclude, as the trial panel did, that Lott robbed, set fire to and purposely killed McGrath, and burglarized his home.

Lott's purposeful intention to cause death can be inferred from the act of pouring lamp oil over McGrath and setting him on fire. "It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State* v. *Johnson* (1978), 56 Ohio St. 2d 35, 39, 10 O.O. 3d 78, 80, 381 N.E. 2d 637, 640; *State* v. *Thomas* (1988), 40 Ohio St. 3d 213, 217, 533 N.E. 2d 286, 290, certiorari denied (1989), 493 U.S. ___, 107 L. Ed. 2d 54, 110 S. Ct. 89. Intent " 'can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances * * *.' " *State* v. *Johnson* (1978), *supra,* at 38, 10 O.O. 3d at 80, 381 N.E. 2d at 640, quoting *State* v. *Huffman* (1936), 131 Ohio St. 27, 5 O.O. 325, 1 N.E. 2d 313; *State* v. *Robinson* (1954), 161 Ohio St. 213, 53 O.O. 96, 118 N.E. 2d 517, paragraph five of the syllabus.

Lott argues unreasonably that McGrath may have burned himself through careless smoking. However, McGrath's burns were extensive, yet the fire was minimal. Lamp oil poured over McGrath offered a reasonable and the best explanation. Lott's incredible hypothesis of careless smoking would require that McGrath first douse himself with flammable lamp oil before carelessly setting himself on fire. Lott's speculations about consensual entry, or about the lack of a contemporaneous theft or attempted theft, are equally unreasonable given the condition of McGrath's home. Thus, Lott stands convicted on constitutionally adequate evidence.

## V

### Prior Felony Conviction Specification

In proposition VI, Lott argues prejudicial constitutional error. The aggravated murder charge contained as surplusage a prior felony conviction specification. The state argues this specification was proper in the event Lott were convicted of a lesser included offense to aggravated murder.

Since the trial panel convicted Lott of aggravated murder, that specification had no possible relevance. A prior felony conviction specification is not a specified aggravating circumstance for aggravated murder. R.C. 2929.04(A); *State* v. *Hamblin* (1988), 37 Ohio St. 3d 153, 157, 524 N.E. 2d 476, 480, certiorari denied (1988), 488 U.S. ___, 102 L. Ed. 2d 550, 109 S. Ct. 515. Indeed, the trial panel should have struck that specification. Its inclusion com-

plicated the proceedings. See *State* v. *Johnson* (1986), 24 Ohio St. 3d 87, 92, 24 OBR 282, 286, 494 N.E. 2d 1061, 1065; *State* v. *Penix* (1987), 32 Ohio St. 3d 369, 513 N.E. 2d 744. However, Lott waived any error by not moving to dismiss that specification. *State* v. *Williams, supra.*

Also Lott was not prejudiced by this surplusage language. The parties stipulated to the prior convictions at trial. The prior convictions were properly listed in the other charged felony counts. His prior convictions negated the possible mitigating factor of lack of a prior criminal record. R.C. 2929.04(B)(5). Simply because the sentencing panel found this specification to be proven does not establish the panel considered it when they sentenced Lott. In its sentencing opinion, the trial panel specifically adjudged "the defendant's past criminal record was not a factor in mitigation *nor was it a factor in aggravation.*" (Emphasis added.) Decisions of trial panels are presumed to be regular. *State* v. *Post, supra.* Thus Lott's claim of prejudice from any error here lacks merit.

## VI
### Other Acts

In proposition VII, Lott argues improper "other acts" testimony. In her extensive testimony, Coleman identified Lott as the person driving McGrath's Ford Escort more than twenty-eight hours before the police found McGrath. Coleman especially noticed Lott because he acted suspiciously in her neighborhood and later assaulted and possibly robbed Mrs. Turk, an elderly neighbor. However, Coleman's testimony about other acts was an integral part of her identification of Lott.

Evidence of other acts, although they are crimes, is admissible for vari-

ous purposes such as identity. Evid. R. 404(B). The relatively brief, benign and muted evidence about Lott's other similar crimes, presented here, constituted neither error nor prejudice to Lott's rights. See *Dowling* v. *United States* (1990), 493 U.S. ___, 107 L. Ed. 2d 708, 110 S. Ct. 668; *State* v. *Jamison* (1990), 49 Ohio St. 3d 182, 552 N.E. 2d 180, syllabus; *State* v. *Byrd* (1987), 32 Ohio St. 3d 79, 92, 512 N.E. 2d 611, 624, certiorari denied (1988), 484 U.S. 1037; *State* v. *Watson* (1971), 28 Ohio St. 2d 15, 57 O.O. 2d 95, 275 N.E. 2d 153, paragraph one of the syllabus.

## VII
### Improper Guilt Standard

In proposition VIII, Lott argues the trial court applied an improper legal standard in adjudging his guilt in purposely killing McGrath. Lott constructs his argument based on a finding in the *penalty* phase. There the trial court said that "the setting of the victim (an elderly man of 84 [*sic*] years) on fire and the leaving of him unattended with the *probability* of death was a factor in aggravation." (Emphasis added.) As the court of appeals ruled, Lott's arguments lack merit.

Lott takes the sentencing panel's quoted language out of context since the sentencing panel was explaining why the nature and circumstances of the offense did not mitigate the death penalty. See R.C. 2929.04(B); *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 116, 31 OBR 273, 277, 509 N.E. 2d 383, 389. Thus, the sentencing panel used "probability" only in this limited sense. Proof of intention is elusive and can only be shown by objective facts and circumstances. Therefore persons are presumed to intend the natural, reasonable and probable consequences of their voluntary acts. *State* v.

*Johnson* (1978), *supra*, at 39, 10 O.O. 3d at 80, 381 N.E. 2d at 640; *State* v. *Robinson, supra.* In fact, absent concrete evidence of an incorrect standard, the trial panel's adjudication is presumed regular. See *State* v. *Post, supra.* Clearly then the record does not support Lott's unwarranted assertion that the trial court applied an improper guilt standard.

## VIII
### Constitutionality

In proposition IX, Lott asserts that it is unconstitutional for Ohio to require proof of mitigating factors by a preponderance of the evidence. We have previously construed and upheld Ohio's statutory scheme and rejected similar arguments. See *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 171-172, 15 OBR 311, 317-318, 473 N.E. 2d 264, 275; *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 101, 512 N.E. 2d 598, 605; *State* v. *Lawrence* (1989), 44 Ohio St. 3d 24, 27, 541 N.E. 2d 451, 455.

In proposition XIV, Lott challenges the constitutionality of Ohio's felony murder scheme, which allows the same specified criminal acts to be a basis for the principal charge of aggravated murder and for the specification which elevated the crime to a death penalty offense. We have rejected this argument in *State* v. *Jenkins, supra,* at 177-178, 15 OBR at 323, 473 N.E. 2d at 279-280; and in *State* v. *Henderson* (1988), 39 Ohio St. 3d 24, 528 N.E. 2d 1237, certiorari denied (1989), 489 U.S. \_\_\_, 103 L. Ed. 2d 824, 109 S. Ct. 1357.

In proposition XVII, Lott argues that Ohio's death penalty statutes are unconstitutional. Defense counsel acknowledges that this court has upheld Ohio's death penalty statutes in *State* v. *Jenkins, supra,* at 168-179, 15 OBR at 314-324, 473 N.E. 2d at 272-281, and acknowledges that the issue is raised for preserving this issue for possible further review. We again recognize the constitutionality of these statutes.

## IX
### Aggravating Circumstances — Mitigating Factors

In propositions X, XI, XII, XIV, and XV, Lott asserts the trial court in its sentencing decision injected a nonstatutory aggravating circumstance, gave no weight to mitigating factors, and did not explain why the aggravating circumstance outweighed any mitigating factors.

"In scrutinizing death penalty procedures under the Eighth Amendment, the [United States Supreme] Court has emphasized the 'twin objectives' of 'measured consistent application and fairness to the accused.' " *Clemons* v. *Mississippi* (1990), 494 U.S. \_\_\_, 108 L. Ed. 2d 725, 110 S. Ct. 1441, 1448, quoting *Eddings* v. *Oklahoma* (1982), 455 U.S. 104, 110-111. Indeed, it is within the province of this court to conduct its own careful appellate reweighing of aggravating circumstances against mitigating factors to produce a "measured consistent application" of the death penalty which would be in no way unfair to the defendant. *Clemons* v. *Mississippi, supra.* "Nothing inherent in the process of appellate reweighing is inconsistent with the pursuit of the foregoing [twin] objectives." *Id.*

Thus, we hold that whatever errors the trial court may have committed in weighing the aggravating circumstance against any mitigating factors have been rectified by this court's careful independent reweighing. We uphold the trial court's sentence of death in this case and address each of Lott's asserted errors below.

In proposition X, Lott asserts the trial panel found that the act of setting the victim "on fire and the leaving of him unattended with the probability of death was a factor in aggravation." The court of appeals held such a finding was harmless error.

It is true that the nature and circumstances of an offense are not a statutory aggravating circumstance and cannot be considered as such. *State* v. *Davis* (1988), 38 Ohio St. 3d 361, 370-372, 528 N.E. 2d 925, 933-936, certiorari denied (1989), 488 U.S. ___, 102 L. Ed. 2d 980, 109 S. Ct. 849; *State* v. *Johnson* (1986), *supra,* at 93, 24 OBR at 287, 494 N.E. 2d at 1066. However, a trial court is required to "* * * consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense * * *." R.C. 2929.04(B). In *State* v. *Moreland* (1990), 50 Ohio St. 3d 58, 69, 552 N.E. 2d 894, 905, this court said:

"* * * In its sentencing opinion, it was wholly proper for the panel to rely upon and cite the nature and circumstances of the offense as reasons for supporting the finding that the aggravating circumstance outweighed the mitigating factors. *Stumpf, supra,* [paragraph one of the syllabus]. We presume that the panel knew the difference between an aggravating circumstance on the one hand and the nature and circumstances of the crime on the other hand. Simply because the panel referred to aggravating circumstanc*es* does not mean that the nature and circumstances of the crime became a nonstatutory aggravating circumstance."

Without question, the facts and circumstances of the burning of an elderly victim are an integral part of the specified aggravating offense of murder in the course of robbery and burglary. Thus, we agree with the court of appeals that any error the trial panel may have committed in using the particular language it did was harmless beyond a reasonable doubt.

Lott also asserts that the trial court gave no weight to mitigating factors and did not explain why the aggravating circumstance outweighed any mitigating factors. The trial court found the evidence did not establish any mitigating factors under R.C. 2929.04(B). It logically follows that, since the court found no mitigating factors, it concluded that the aggravating circumstance outweighed any mitigation. See *State* v. *Byrd, supra,* at 85, 512 N.E. 2d at 618-619; *State* v. *Post, supra,* at 389, 513 N.E. 2d at 764.

We stated in *State* v. *Post, supra,* that

"* * * Although R.C. 2929.04(B) requires a trial court or three-judge panel to *consider* the factors enumerated therein, '* * * it does not require that court or panel to find that such evidence *establishes* a mitigating factor or factors.' (Emphasis added.) *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 101, 512 N.E. 2d 598, 605. See, also, *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 129, 31 OBR 273, 289, 509 N.E. 2d 383, 399." *Id.*

In fact, the assessment and weight to be given mitigating evidence are matters for the trial court's determination. *State* v. *Steffen, supra,* at paragraph two of the syllabus. However, to meet the statutory mandate of R.C. 2929.03(F), the trial court in this case should have more explicitly analyzed the mitigating evidence the defense presented, particularly that evidence relevant to "other factors" under R.C. 2929.04(B)(7). While unquestionably the sentencing panel should have conducted this more explicit analysis, whatever error that may have been committed in that

panel's analysis has been rectified by our independent reweighing of the aggravating circumstance against any mitigating factors (see *Clemons* v. *Mississippi, supra*), which we discuss below.

R.C. 2929.04(B)(3) allows the defendant to present evidence that "* * * at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law * * *." In propositions XII and XV, Lott asserts that the prosecution was allowed to improperly rebut the defense's mitigation evidence of mental disease or defect and that, as stated, the sentencing panel did not weigh proved mitigating factors.

In attempting to establish the defendant's impaired mental capacity, defense counsel called two psychologists who expressed opinions about Lott's drug dependency on marijuana or alcohol, with one psychologist, Dr. James Eisenberg, characterizing drug dependency as a mental defect. The state rebutted this defense evidence through the testimony of three witnesses. One, Detective James Copeland of the East Cleveland Police Department, had interviewed Lott on July 11, 1986, several days before the offense. Detective Copeland testified that Lott exhibited no signs of alcohol or drug usage on that day. Another was Lott's probation officer, Maria Nemec, a trained alcohol counselor, who observed Lott twice weekly from May 23 until the end of July 1986. She also had Lott's urine checked for drugs and saw no sign of Lott's using drugs, although evidence of codeine from a cough syrup prescription was discovered in June. Lastly, Jeanette Zebris, the head nurse of a chemical dependency unit at Southwest General Hospital, had interviewed Lott on July 29 and testified that she found Lott was not addicted to drugs, although she stated that he did abuse them. Zebris based this testimony upon Lott's written answers to an intake assessment form and upon her observations of Lott.

The trial court properly admitted the state's rebuttal evidence on possible alcohol and drug abuse, since the defense first put forward evidence which it characterized as showing such abuse. We note that neither side claimed or offered any evidence that Lott was intoxicated at the time of the offense. Based upon our independent reweighing of this evidence, we find that the state adequately rebutted Lott's claims of alcohol and drug dependency. Thus, while the sentencing panel should have more explicitly addressed this evidence regarding alcohol and drug abuse, we find no error in that panel's failure to consider such evidence to be a mitigating factor under R.C. 2929.04(B)(3).

The sentencing panel could also have addressed evidence of Lott's intelligence as a possible mitigating factor under R.C. 2929.04(B)(3). Tests indicated Lott's intelligence quotient ranged in the low average categories, with "I.Q." tests yielding results of 77-81, 83-91, and 87-97. Also the panel could have more directly discussed Lott's age of twenty-five as relevant to the mitigating factor of "[t]he youth of the offender * * *" with reference to Lott's limited development and deprived childhood. (R.C. 2929.04[B][4].) Again, however, any error committed in not expressly analyzing this evidence in sentencing has been corrected by this court's independent appellate reweighing.

The sentencing panel should also have been more explicit in its analysis of Lott's "* * * history, character, and

background * * *'' (R.C. 2929.04[B]) and in its analysis of "other factors" under R.C. 2929.04(B)(7). Specifically, the defense presented evidence that Lott studied diligently and was progressing well toward obtaining a G.E.D. equivalency certificate while awaiting trial, and that Lott's abilities to express himself have improved. Previously, Lott exhibited poor academic performance in school. While our review of the evidence does not support the defense's contention that Lott was dependent on alcohol or marijuana, it is evident alcohol and drug abuse did contribute to his problems. Lott did manage to work for several months at a part-time job in a supermarket; however, he worked very little after April 1986.

Psychologist James Eisenberg characterized Lott as a loner, with low self-esteem and feelings of inferiority, and with a passive dependent personality. Lott blamed his troubles on alcohol and drugs, on lack of parental guidance or support, and on his father's leaving home. Lott stated he was never in trouble as a juvenile, felt depressed and "bad" about the situation, and prayed for McGrath and himself.

On the other hand, our independent review indicates that the trial court was correct in finding that Lott had failed to prove by sufficient evidence the mitigating factors of victim inducement (R.C. 2929.04[B][1]), duress (R.C. 2929.04[B][2]), or Lott's involvement in a capacity other than as the principal offender (R.C. 2929.04 [B][6]). Lott's prior convictions in 1984 for burglary and robbery make the R.C. 2929.04(B)(5) factor of "* * * the offender's lack of a significant history of prior criminal convictions and delinquency adjudications * * *'' inapplicable to Lott's case. Indeed, Lott

was on probation when he committed this act.

The nature and circumstances of the offense (R.C. 2929.04[B]) offer nothing to mitigate the aggravating circumstance of this crime. Unquestionably, attacking and killing an eighty-two-year-old victim in his home by pouring flammable oil on him, setting him ablaze, and then abandoning the victim to his fate is an absolutely heinous act. Thus, based upon our independent reweighing of the aggravating circumstance against any mitigating factors in this case, *Clemons* v. *Mississippi, supra,* we conclude that the proved aggravating circumstance of robbery and burglary outweighs any mitigating factors beyond a reasonable doubt. R.C. 2929.04(B).

X

Prosecutorial Misconduct — Sentencing

In proposition XI, Lott asserts that the prosecutor committed misconduct at the sentencing phase of his trial. Lott argues that the prosecutor injected nonstatutory aggravating circumstances and inadmissible "other acts" discussed above, in addition to denigrating the defense.

In a pre-mitigation hearing motion, defense counsel asked the prosecutor to disclose information regarding aggravating circumstances and mitigating factors. The prosecution responded by providing information including indictments pending against Lott, allegedly relevant to the statutory mitigating factor, R.C. 2929.04(B)(5), "* * * lack of a significant history of prior criminal convictions and delinquency adjudications * * *.'' In providing this information the prosecutor attempted to put irrelevant information before the court,

since only convictions, not pending indictments, are relevant to R.C. 2929.04(B)(5).

The prosecutor also attempted to introduce testimony of the victims of these alleged offenses, for which Lott had been indicted but not convicted. However, the court declined to admit this testimony or hear a proffer of its content. As we discussed earlier, Lott asserts the prosecutor attempted to introduce evidence of these crimes, together with Lott's lack of remorse and the violent nature of his acts, as non-statutory aggravating circumstances. Lott also argues the prosecution improperly commented that defense counsel developed the mitigation strategy allegedly without a proper regard for the facts.

While there was some degree of improper conduct by the prosecutor, Lott failed to establish how this conduct prejudicially affected his substantial rights. *State* v. *Smith, supra,* at 14-15, 14 OBR at 318-319, 470 N.E. 2d at 885-886. Our focus on review should be on "* * * the fairness of the trial, not the culpability of the prosecutor." *Smith* v. *Phillips* (1981), 455 U.S. 209, 219, certiorari denied (1984), 465 U.S. 1027. As to revealing the other pending indictments, defense counsel withdrew and the court never ruled on the defense disclosure motion. Also, the trial panel already knew of the other pending indictments and was careful to avoid admitting evidence about other indictments pending against Lott.

The prosecution is entitled to challenge defense mitigation evidence by cross-examination or rebuttal. *State* v. *DePew* (1988), 38 Ohio St. 3d 275, 286-287, 528 N.E. 2d 542, 555, certiorari denied (1989), 489 U.S. ___, 103 L. Ed. 2d 241, 109 S. Ct. 1099. Also, defense counsel generally failed to object to the prosecutor's improper remarks and so, without a showing of plain error, waived the right to challenge these remarks on appeal. *State* v. *Ferrette* (1985), 18 Ohio St. 3d 106, 18 OBR 139, 480 N.E. 2d 399; *State* v. *Williams, supra; State* v. *Gordon* (1971), 28 Ohio St. 2d 45, 57 O.O. 2d 180, 276 N.E. 2d 243. Thus, we find that any misconduct by the prosecutor did not substantially infringe upon Lott's substantive rights. *State* v. *Smith, supra.*

## XI

### Ineffective Assistance of Counsel

In proposition XIII, Lott asserts he was deprived of the effective assistance of counsel, in violation of his Sixth Amendment rights. He asserts error in the following areas: defense counsel's failure to move to suppress evidence of an eyewitness identification; defense counsel's failure to object to joinder of the 1983 burglary and theft offenses (see our discussion of proposition I); defense counsel's failure to object to admission of evidence of the lamp oil and telephone cord (see our discussion of proposition II); defense counsel's failure to object to prosecutorial misconduct (see our discussion of propositions III, IV and X); and in other tactical decisions of defense counsel during the guilt and sentencing phases of Lott's trial.

A reversal based upon a claim of ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced his defense so as to deprive the defendant of a fair trial. *Strickland* v. *Washington* (1984), 466 U.S. 668, 687. This court has held that a properly licensed attorney is presumed competent. *State* v. *Smith* (1985), 17 Ohio St. 3d 98, 100, 17 OBR 219, 221, 477 N.E. 2d 1128, 1131, citing *Vaughn* v. *Maxwell* (1965), 2 Ohio St. 2d 299, 301, 31 O.O. 2d 567,

568, 209 N.E. 2d 164, 166. "Thus, the burden of proving ineffectiveness is on the defendant." *State* v. *Smith* (1985), *supra.*

Lott claims defense counsel should have moved to suppress Coleman's eyewitness identification of Lott. However, Lott has not demonstrated that the trial court would have granted such a motion. Indeed Coleman had several opportunities to observe Lott, whose suspicious actions drew Coleman's attention. She called the police twice and, as a trained artist, even sketched Lott's face. Coleman identified Lott from a photo array conducted on July 28, before Lott's arrest. Further, Coleman described a red and black running suit Lott was wearing, which was later found in Lott's car.

To suppress identification testimony, there must be "* * * a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States* (1968), 390 U.S. 377, 384. The focus, under the "totality of the circumstances," is upon the reliability of the identification, not the identification procedures. *Manson* v. *Brathwaite* (1977), 432 U.S. 98, 113. (Accord *Neil* v. *Biggers* [1972], 409 U.S. 188, 196-197; *State* v. *Moody* [1978], 55 Ohio St. 2d 64, 9 O.O. 3d 71, 377 N.E. 2d 1008.) Any discrepancies between the police officers' and Coleman's testimony do not indicate suggestive identification techniques. Nor does Lott refute the underlying facts supporting the identification's reliability. Therefore, defense counsel's motion to suppress the identification would have been futile and thus Lott has no sound basis to assert ineffective assistance here.

As we discussed when dealing with propositions I and II, counsel need not have objected to the joinder of the 1983 offenses or to the admission of evidence concerning the lamp oil and telephone cord, respectively. As we discussed when dealing with propositions III, IV and XI, defense counsel's failure to object to unwarranted prosecutorial remarks breached no essential duty, since Lott's substantive rights were not prejudiced thereby. Nor did defense counsel's decision to defer a suppression hearing until during the trial breach Lott's substantive rights, since the court did in fact suppress the statement at issue from evidence.

Lott asserts that his right to effective assistance of counsel was also denied when defense counsel did not move for a new trial or to reopen the trial after new allegedly exculpatory evidence was discovered during the sentencing phase of the trial. This evidence simply established that Lott's fingerprints were not found on McGrath's car. The mere absence of Lott's fingerprints does not refute evidence admitted at trial and is therefore not exculpatory. Neither was this evidence "newly discovered," since Lott failed to establish that defense counsel was newly made aware of this evidence or could not with reasonable diligence have discovered this evidence before trial began. Crim. R. 33(A)(6). Clearly, the trial court would not have granted motions for a new trial or to reopen the trial on the basis of the absence of Lott's fingerprints in McGrath's car. Thus there was no prejudice to Lott's rights and his Sixth Amendment guarantees were preserved. *Strickland* v. *Washington, supra.*

Lott argues that defense counsel breached Lott's right to effective assistance of counsel when defense counsel did not object to admitting a presentence investigation report into evidence that also contained McGrath's hearsay statement to the East Cleveland Police Department. In that

statement, McGrath told the police that earlier a man had broken into his home, beaten him, set him on fire, and stolen his money and his 1982 Ford Escort.

Prior to the sentencing phase of the trial, Lott requested a presentence investigation and a psychiatric evaluation, as provided by R.C. 2929.03 (D)(1). That section further provides that once a presentence report is made, copies "* * * shall be furnished to the court * * *." See *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 138, 22 OBR 203, 215, 489 N.E. 2d 795, 808, certiorari denied (1986), 479 U.S. 871. Defense counsel's objection to the panel's receipt of the presentence investigation report would have been for naught. It is also noted that the trial panel had before it McGrath's hearsay statements contained within the medical reports the prosecutor sought to introduce into evidence and later incorporated into the presentence investigation report. Because the sentencing panel had the right under R.C. 2929.03(D)(1) to receive Lott's presentence investigation report, and because we presume a trial panel so scrupulous to avoid admitting improper evidence at trial would not later have relied upon that excluded evidence in imposing its sentence, *State* v. *Post, supra,* at 384, 513 N.E. 2d at 759, we conclude that Lott's arguments regarding ineffective assistance of counsel are without merit.

## XII

### Proportionality Review

In proposition XVI, Lott argues his sentence of death is excessive and disproportionate compared to similar cases. To support his proposition, Lott presents the same mitigating factors he failed to prove during the sentencing phase and which we have independently reviewed and rejected.

Lott also argues his crimes were less heinous than other aggravated murders, particularly those committed by the offenders in *State* v. *Martin* (1985), 19 Ohio St. 3d 122, 19 OBR 330, 483 N.E. 2d 1157, certiorari denied (1986), 474 U.S. 1073, and in *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 23 OBR 13, 490 N.E. 2d 906, certiorari denied (1987), 480 U.S. 923. Lott is correct in asserting that the acts of the offender in *Williams* (1986), *supra,* who shot an elderly woman in the head, and of the offender in *Martin, supra,* who shot his victim, who was less than two feet away, involved brutal and heinous acts directly causing the victims' deaths. Clearly, however, Lott's vicious acts of burgling and robbing, setting on fire, and then abandoning a helpless eighty-two-year-old who lived alone are equally as heinous and direct as the acts committed in *Williams, supra,* and in *Martin, supra.*

Lott also argues that the circumstances and the nature of his offense demand a less severe penalty than that of death, as imposed on the offender in *State* v. *Mapes* (1985), 19 Ohio St. 3d 108, 19 OBR 318, 484 N.E. 2d 140, certiorari denied (1986), 476 U.S. 1178. *Mapes* involved the trial court's finding the offender guilty of a prior murder specification under R.C. 2929.04(A)(5), since the court in *Mapes* had previously received a judgment of conviction of murder from a New Jersey court, entered upon Mapes's plea of *non vult. Id.* at 110, 19 OBR at 319-320, 484 N.E. 2d at 143. Thus, the defendant in *Mapes, supra,* was convicted under R.C. 2929.04(A)(5) for a killing where the offender was guilty of a previous purposeful killing or attempt to kill. Lott, on the other hand, was convicted under R.C. 2929.04 (A)(7) for a killing in the course of aggravated burglary and aggravated rob-

bery. Thus, we find the facts and circumstances in *Mapes, supra,* to be inapplicable to this case.

After conducting a proportionality review and comparing Lott's case with other robbery-murder cases, we find that Lott's death sentence is proportionate and not excessive. See *State* v. *Tyler* (1990), 50 Ohio St. 3d 24, 553 N.E. 2d 576; *State* v. *Clark* (1988), 38 Ohio St. 3d 252, 527 N.E. 2d 844, certiorari denied (1989), 489 U.S. ____, 103 L. Ed. 2d 823, 109 S. Ct. 1355; *State* v. *Post, supra; State* v. *Scott* (1986), 26 Ohio St. 3d 92, 26 OBR 79, 497 N.E. 2d 55, certiorari denied (1987), 480 U.S. 923; *State* v. *Martin, supra.*

Accordingly, appellant's convictions and sentence are affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, H. BROWN and RESNICK, JJ., concur.