[Cite as *State v. Yanni*, 2020-Ohio-1352.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| MICHEL E. YANNI, | : | Case No. CT2019-0050 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Muskingum County
                                Court of Common Pleas, Case No.
                                CR2018-0702


JUDGMENT:                       Affirmed


DATE OF JUDGMENT:               April 6, 2020


APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

D. MICHAEL HADDOX                       SAMUEL H. SHAMANSKY
Prosecuting Attorney                    DONALD L. REGENSBURGER
Muskingum County, Ohio                  COLIN E. PETERS
                                        ASHTON C. GAITANOS
 By:  TAYLOR P. BENNINGTON             Samuel H. Shamansky Co., L.P.A
Assistant Prosecuting Attorney          523 South Third Street
Muskingum County, Ohio                  Columbus, Ohio 43215
27 North Fifth St. P.O. Box 189
Zanesville, Ohio 43701

*Baldwin, J.*

{¶1}   Defendant-appellant Michel Yanni appeals his conviction and sentence from the Muskingum County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶2}   On November 8, 2018, the Muskingum County Grand Jury indicted appellant on one count of trafficking in drugs (methamphetamine) in violation of R.C. 2925.03(A)(1), a felony of the first degree, and one count of permitting drug abuse in violation of R.C. 2925.13(A), a felony of the fifth degree.  The indictment also contained a major drug offender specification. At his arraignment on November 14, 2018, appellant entered a plea of not guilty to the charges.

{¶3}   Subsequently, a jury trial commenced on April 4, 2019. The following testimony was adduced at trial.

{¶4}   Detective Matt Wilhite of the Muskingum County Sheriff's Office testified that he was assigned to the Central Ohio Drug Enforcement Task Force. Wilhite testified that a confidential informant (C.I.) gave him information about two targets that he "could assist with during the investigation, and could buy pound quantities of methamphetamine and possibly kilo quantities of cocaine." Trial Transcript at 69.  One of the targets was appellant.  He testified that the C.I. informed law enforcement that he could arrange to purchase eight to ten pounds of methamphetamine from appellant in Muskingum County.

{¶5}   On October 30, 2018, law enforcement and the C.I. arranged for a controlled buy of narcotics from appellant. The C.I. was wired and provided with $4,500.00 in prerecorded cash. The C.I. met appellant in the Dollar General parking lot in

Gratiot, Ohio. There was testimony that the C.I. pulled in the parking spot next to appellant and got into the front seat of appellant's vehicle. After a conversation about money, the C.I. asked appellant "where it's at" and appellant indicated that it was in the trunk. Trial Transcript at 92. The C.I. then got into the trunk for a short period of time, shut the trunk and then walked back over to appellant's vehicle and said goodbye. The C.I. then got back into his own vehicle.   Wilhite testified that he observed that the C.I. had a large white object in his hand.

{¶6}   Appellant then proceeded west on State Route 40. Wilhite testified that he made contact with the C.I. and made sure that the transaction had been completed and that he advised other detectives that appellant was heading west on State Route 40. He testified that he recovered the drugs from the C.I.'s vehicle in a plastic Wal-Mart bag. Law enforcement initiated a traffic stop of appellant's vehicle and located the $4,500.00 in buy money in appellant's vehicle. An undercover video of the controlled buy was played at trial for the jury.

{¶7}   After appellant was placed under arrest, DEA agents conducted a search of his Columbus residence. Vacuum sealed bags, which are used to package drugs, pay-owe sheets, which are ledgers used to keep track of money someone would owe versus the amount of drugs sold, digital scales and three cell phones were located.   Detective Wilhite testified that these items were commonly used by drug dealers to keep track of drug sales.

{¶8}   Appellant testified at trial in his own defense. He testified that he began to sell marijuana due to his financial issues and testified that the items recovered from the search of his Columbus residence, including ledgers, were from his marijuana selling

business. He denied ever dealing methamphetamine. Appellant testified that he was in business with the C.I. and that he would front the C.I. marijuana and the C.I. would then repay him as it was sold.

{¶9}     On cross-examination, appellant admitted to dealing drugs for a long time. The following testimony was then elicited on cross-examination:

{¶10}  Q:  At least since you got out of prison on the bank fraud?

{¶11}  A:  Yes.

{¶12}  Q:  You want these people to believe you're just a weed dealer; right?

{¶13}  A:  Absolutely, because it's the truth.

{¶14}  Q:  Okay.  Now, in 2016, you got caught in Columbus with 100 pounds of weed; right?

{¶15}  A:  Yes, I did.

{¶16}  Q:  And you were a fugitive since then?

{¶17}  A:  Yes, yes.  I have –

{¶18}  Q:  Now, was that good weed, or was that ditch weed?

{¶19}  MR. SHAMANSKY:  Object; relevancy, Your Honor.

{¶20}  THE COURT:  Overruled.  It's cross-examination.

{¶21}  Q:  Was it good weed, or was it just - -

{¶22}  A:  The hundred pounds that I was caught with was what you call a middle-grade weed.  It's between - -

{¶23}  MR. SHAMANSKY:  Your Honor, again, I'm just going to object.  He has a Fifth Amendment right.  That case is pending.  And I'm just going to put on the record - -

{¶24}  THE COURT:  I had no idea this case was pending.

{¶25} MR. SHAMANSKY: Oh. Well, that was part of the question. But it is pending, he does have a Fifth Amendment right. I still don't see the relevancy of that indictment to this case. But just want to make the record clear.

{¶26} THE COURT: Overruled. Go ahead.

{¶27} Q: You said it was mid-grade weed?

{¶28} A: Yes.

{¶29} Q: So, generally, you spoke about this high-grade weed being worth $3,000 a pound.

{¶30} A: Yes.

{¶31} Q: So if it was high-grade weed, that would be $300,000 worth of weed. At the border, directly from cartel, brick-packed, Mexican ditch weed is $300 a pound; right?

{¶32} A: No.

{¶33} Q: I mean, that's - - that's pound for the cheapest dirt weed you can get, from the best price you can get.

{¶34} A: Well, unfortunately, I don't know about the dirt weed because I don't deal with the dirt weed. As far as marijuana, I deal with mid grade up to high grade and that's it.

{¶35} Q: Okay. So you get caught with, what, $100,000 worth of weed?

{¶36} A: Yes. Approximately.

{¶37} Trial Transcript at 360-362.

{¶38} At the conclusion of the evidence, appellee dismissed the permitting drug abuse charge. During closing argument, appellee stated, in relevant part, that "[i]n this case, [appellant] knew he was selling meth. It was his profession. Sells drugs, sells meth,

sells weed. Does this every day." Trial Transcript at 396-397. The prosecutor further argued as follows:

{¶39} You don't get at this level of the game without being very smart, okay. And while some people think, oh, you know, somebody's just dealing a little weed. When you are dealing in hundreds of thousands of dollars in weed - - this is not like medical marijuana. This is, I am a drug dealer. This is my profession. Whatever commodity, drug dealing is the profession at that level.

{¶40} Trial Transcript at 406.

{¶41} At the conclusion of the evidence and the end of deliberations, the jury, on April 5, 2019, found appellant guilty of trafficking in drugs (methamphetamine) and the major drug offender specification. As memorialized in an Entry filed on May 9, 2019, appellant was sentenced to eleven (11) years in prison and fined $20,000.00.

{¶42} Appellant now raises the following assignments of err on appeal:

{¶43} "I. THE TRIAL COURT ERRED BY PERMITTING THE STATE TO ELICIT TESTIMONY FROM APPELLANT REGARDING AN UNRELATED PENDING CRIMINAL INDICTMENT IN FRANKLIN COUNTY, OHIO IN VIOLATION OF APPELLANT'S RIGHTS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITE STATED CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

{¶44} "II. THE TRIAL COURT ERRED BY PERMITTING THE INTRODUCTION OF UNFAIRLY PREJUDICIAL AND IRRELEVANT EVIDENCE IN VIOLATION OF THE OHIO RULES OF EVIDENCE AND APPELLANT'S RIGHTS AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS."

**{¶45}** "III. THE PROSECUTOR'S REMARKS REGARDING APPELLANT'S PENDING CRIMINAL INDICTMENT IN FRANKLIN COUNTY, OHIO CONSTITUTED PROSECUTORIAL MISCONDUCT IN VIOLATION OF APPELLANT'S RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

I, II

**{¶46}** Appellant, in his first assignment of error, argues that the trial court erred in allowing testimony about appellant's unrelated criminal indictment in Franklin County. In his second assignment of error, he contends that the trial court erred by permitting appellee to inquire into such indictment.

**{¶47}** Appellant, as is stated above, testified at trial in his own defense. Appellant testified that he became involved in drug dealing after he was released from incarceration after being convicted of bank fraud. He testified that he began dealing marijuana due to financial problems and that he started out small, but it did not take long for him to sell larger quantities. Appellant also admitted that the items recovered from his residence were accounts of his marijuana business. Appellant testified that the ledger taken by law enforcement was for a brand called "Blue Dream" which was a high-grade marijuana. Trial Transcript at 330. Appellant, when asked, denied ever dealing methamphetamines and testified that he and the C.I. started engaging in marijuana trafficking together and were partners. According to appellant, he would front the C.I. the marijuana and the C.I. would repay appellant as he sold the same.

**{¶48}** Appellant stated that days before his arrest, he supplied the C.I. with six pounds of high grade marijuana worth $3,000.00 a pound, for a total of $18,000.00 as is stated above, the following is an excerpt from appellant's trial testimony:

**{¶49}** A: When I receive my product they're always, always going to be in a bag that's placed in another bag, both bags are sealed; the first bag being sealed, and the second bag being sealed. To open that bag, I have to cut open the top of the bag to get to the original bag. And as you can see on this particular one - -

**{¶50}** Q: Which one, sir?

**{¶51}** A: This one with the writing on it. There's letter on here, SF OG. OG is a brand of high-grade marijuana. SF is a - - it's almost like - - like you have Land Rover and then Range Rover, the make and the model. The make - - or the - - yeah, the make is the OG, the model is the SF. And this is where - - this is - -

**{¶52}** Q: So that's - -

**{¶53}** A: - - exactly what that is.

**{¶54}** Q: - - that's a marijuana designation; correct?

**{¶55}** A: Yes. Yes.

**{¶56}** Q: Do these have anything to do with crystal methamphetamine?

**{¶57}** A: Absolutely not.

**{¶58}** Trial Transcript at 335.

**{¶59}** After appellant testified, the following testimony was elicited on cross-examination:

**{¶60}** Q: So you've been dealing drugs for a long time?

**{¶61}** A: Yes.

**{¶62}** Q: At least since you got out of prison on the bank fraud?

**{¶63}** A: Yes.

**{¶64}** Q: You want these people to believe you're just a weed dealer; right?

**{¶65}** A: Absolutely, because it's the truth.

**{¶66}** Q: Okay. Now, in 2016, you got caught in Columbus with 100 pounds of weed; right?

**{¶67}** A: Yes, I did.

**{¶68}** Q: And you were a fugitive since then?

**{¶69}** A: Yes, yes. I have –

**{¶70}** Q: Now, was that good weed, or was that ditch weed?

**{¶71}** MR. SHAMANSKY: Object; relevancy, Your Honor.

**{¶72}** THE COURT: Overruled. It's cross-examination.

**{¶73}** Q: Was it good weed, or was it just - -

**{¶74}** A: The hundred pounds that I was caught with was what you call a middle-grade weed. It's between - -

**{¶75}** MR. SHAMANSKY: Your Honor, again, I'm just going to object. He has a Fifth Amendment right. That case is pending. And I'm just going to put on the record - -

**{¶76}** THE COURT: I had no idea this case was pending.

**{¶77}** MR. SHAMANSKY: Oh. Well, that was part of the question. But it is pending, he does have a Fifth Amendment right. I still don't see the relevancy of that indictment to this case. But just want to make the record clear.

**{¶78}** THE COURT: Overruled. Go ahead.

**{¶79}** Q: You said it was mid-grade weed?

**{¶80}** A: Yes.

**{¶81}** Q: So, generally, you spoke about this high-grade weed being worth $3,000 a pound.

**{¶82}** A: Yes.

**{¶83}** Q: So if it was high-grade weed, that would be $300,000 worth of weed. At the border, directly from cartel, brick-packed, Mexican ditch weed is $300 a pound; right?

**{¶84}** A: No.

**{¶85}** Q: I mean, that's - - that's pound for the cheapest dirt weed you can get, from the best price you can get.

**{¶86}** A: Well, unfortunately, I don't know about the dirt weed because I don't deal with the dirt weed. As far as marijuana, I deal with mid grade up to high grade and that's it.

**{¶87}** Q: Okay. So you get caught with, what, $100,000 worth of weed?

**{¶88}** A: Yes. Approximately.

**{¶89}** Trial Transcript at 360-362.

**{¶90}** Appellant now contends that the trial court erred by allowing the State to elicit testimony on cross-examination from appellant regarding his unrelated pending criminal indictment in Franklin County, Ohio. We note that appellant's counsel objected to such questioning, arguing that it was irrelevant and that appellant had a Fifth Amendment right against self-incrimination.

**{¶91}** We note, however, that trial counsel never instructed appellant not to answer and that appellant never asserted his Fifth Amendment right against self-incrimination. Moreover, appellant, via his own testimony that he was a small time drug

dealer, opened the door to questioning about his drug trafficking. As noted by appellee, appellant "cannot voluntarily testify in great detail on direct examination about marijuana trafficking and then attempt to limit the State's questioning as to the exact same matter." Furthermore, assuming, arguendo, that it was error to allow such evidence, we cannot say that appellant was prejudiced in any manner based on the evidence regarding the buy made by the C.I. and that fact that appellant admitted being a drug dealer. There was overwhelming evidence of appellant's guilt and any error was harmless beyond a reasonable doubt.

**{¶92}** Appellant's first and second assignments of error are, therefore, overruled.

III

**{¶93}** Appellant, in his third assignment of error, argues that argues that appellee, during closing arguments, engaged in prosecutorial misconduct.

**{¶94}** The test for prosecutorial misconduct is whether the prosecutor's remarks and comments were improper and if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott,* 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990), cert. denied, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596 (1990). In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright,* 477 U.S. 168, 184, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived appellant of a fair trial based on the entire record. *Lott,* supra, 51 Ohio St.3d at 166, 555 N.E.2d 293.

**{¶95}** Appellant, in the case sub judice, specifically argues that the prosecutor engaged in misconduct by eliciting testimony from appellant regarding his pending criminal indictment in Franklin County. Appellant notes that the prosecutor argued during closing arguments that "[i]n this case, [Appellant] knew he was selling meth. It was his profession, Sells drugs, sells meth, sell weed. Does this every day." Transcript at 396-397. Appellant also notes that later the prosecutor stated "[w]hen you are dealing in hundreds of dollars in weed- this is not like medical marijuana. This is I am a drug dealer. This is my profession. Whatever commodity, drug dealing is the profession at that level." Transcript at 406. According to appellant, these actions constituted prosecutorial misconduct.

**{¶96}** We note that appellant's counsel did not object to the above statements made during closing arguments, thereby waiving all but plain error.

**{¶97}** The Ohio Supreme Court has recently clarified the standard of review for plain error:

> Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014–Ohio–4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id.* We recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *Id.* at ¶ 22, *citing United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*State v. Thomas*, 152 Ohio St.3d 15, 92 N.E.3d 821, 2017–Ohio–8011, ¶¶ 32–34.

**{¶98}** We concur with appellee that even if such statements were improper, they were not so prejudicial as to deprive appellant of a fair trial and did not constitute plain error. There was overwhelming evidence presented at trial supporting appellant's conviction. At trial appellant testified that he was a drug dealer, he was actually caught delivering narcotics to a CI and had the pre-recorded drug funds when he was arrested.

Because there was overwhelming evidence presented at trial against appellant, we cannot say that appellant was deprived of a fair trial.

**{¶99}** Appellant's third assignment of error is, therefore, overruled.

**{¶100}** Accordingly, the judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.