DECISION AND JUDGMENT ENTRY
This case is on appeal from the March 28, 2000 judgment of the Lucas County Court of Common Pleas which sentenced appellant following his conviction of violating R.C. 2903.11(A)(1), felonious assault.
Pursuant to the guidelines set forth in Anders v. California (1967),386 U.S. 738, 18 L.Ed.2d 493, 87 S.Ct. 1396, appellant's court-appointed counsel has filed an appellate brief and motion to withdraw as counsel. She mailed a copy of the brief and motion to appellant and informed him that he had a right to file his own brief.
Appellant's counsel states in her motion that she carefully reviewed the record in this case and concluded that the trial court did not commit any error prejudicial to appellant. However, in compliance with the requirements of Anders v. California, supra, appellant's counsel has submitted a brief setting forth the following possible assignments of error:
 "WHETHER PURSUANT TO OHIO LAW AND THE UNITED STATES CONSTITUTION, THE DEFENDANT-APPELLANT'S CONVICTION IS SUPPORTED BY SUFFICIENT PROOF OF GUILT AS TO EACH ESSENTIAL ELEMENT OF THE OFFENSE CHARGED.
 "WHETHER DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL, IN VIOLATION OF HIS SIXTH AMENDMENT RIGHTS."
Appellant's appointed counsel has included arguments which support these assignments of error, but concludes that they are unsupported by the record and/or by the law. Therefore, she concludes that an appeal would be frivolous. Appellant has not submitted his own brief.
In her first proposed assignment of error, appellant's counsel argues that there was insufficient evidence to support the conviction because the evidence proves that appellant acted in self defense.
The prosecution was required to prove that appellant committed an aggravated assault: knowingly causing serious physical harm to another "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, * * *." Appellant was required to prove the elements of his self-defense claim: (1) he did not provoke the fight; (2) he had a "bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force"; and (3) he did not violate his duty to retreat or avoid the use of force. State v. Palmer (1997), 80 Ohio St.3d 543.
The following evidence was presented in this case. James Ramsey, his wife, Juanita, his brother, John, and his sister-in-law, Christina, stopped at Bogart's Bar in the early morning hours of September 18, 1999. Each of the Ramseys gave a different time frame, but all testified that it was early morning and that they had only been there a short time when the incident occurred. The four had been at another bar celebrating a birthday where everyone had drank heavily except Christina who only had one beer. They had stopped at Bogart's on their way home because it was close to their homes. They had been in the bar before but were not regular customers. All four sat at the end of a long island-like table.
John testified that the group had been in the bar only about half an hour and had one drink when appellant, whom John did not know, came up from behind and hit him in the eye. John recalled falling to the ground. When he got up, he saw appellant on top of James on the floor. When appellant got up, Ramsey heard his brother say "You bit my ear off." John tried to get appellant off his brother and then others started to hit John. Several people were on top of appellant and James.
Juanita testified that appellant was with Bobbie Jo Boyd, someone Juanita worked with at the time. About fifteen minutes before the incident, Bobbie Jo had introduced appellant to Juanita. They sat a few seats away from Juanita at the same island-like table. Juanita saw appellant say something to her brother-in-law and then hit him in the eye. Then her husband came around and everyone started fighting.
After the fight began, Juanita heard Christina say "he bit Jim's ear off" and then she saw James run out of the bar. When she got outside, her husband told her that appellant had bit James' ear off and asked her to go back into the bar and get it. His shirt was torn and he had blood all over him.
Christina testified that she saw appellant approach her husband and punch him. A few seconds later she saw that James had been injured and heard him say that his ear was gone.
James testified that he saw appellant hit his brother for no apparent reason. James went to help his brother. He grabbed appellant, others jumped in, and appellant and James fell to the floor with James on the bottom of the pile and appellant on top of him. Appellant then bit James' ear and spit it out at him. They got up and James tried to get at appellant and screamed at him for biting part of his ear off. When he saw the ear, he began to get dizzy and left the bar. James did not recall scratching appellant or biting him; but, James did notice when they stood up that appellant's shirt was almost ripped off. The group then went to the Medical College of Ohio where James received treatment. Bobbie Jo had brought the missing part of James' ear to the hospital.
Both James and John Ramsey testified that they had previous convictions for grand theft and had violated the terms of the probation and served one year in prison.
A detective testified that the four had told him that they had been there less than an hour and that the incident occurred around 2:10 a.m. James arrived at the hospital at 3:30 a.m. The detective did not interview any other witnesses because no one ever told him that others had been involved. He only talked to the Ramseys and the bartender, who did not indicate that anyone else was involved in the fight.
Appellant presented several witnesses on his behalf. Lisa Williams, appellant's long time friend, testified that appellant had been living at her house for about a year at the time of the incident. She saw him the next day at noon and saw that he had been badly beaten. He had a black eye, scratches, deep gouges on his neck, and a bite mark. Appellant had told her that he had been jumped at a bar and that he had bitten some guy's ear off. She did not believe that these injuries could have been caused by just one person.
Deanna Williams, Lisa's seventeen-year-old daughter, testified that she was in the house when appellant came home that morning. He woke her up and told her to look at his face. He had a bite mark on his arm, scratches all over, and a black eye. She saw him again at noon and saw the same thing. A week later when the police were coming to talk to appellant, he told her that he had bitten off some guy's ear. He had told her that he had been jumped at the bar. Appellant had told her that he had been talking to two girls when he was suddenly hit by some guy and then another one jumped on him. She recalled appellant going out that night with Sue Ward.
Bobbie Jo Boyd testified that she knew appellant from hanging out at the bar for the past year. She recalled seeing Juanita who introduced her husband. At some point, Boyd was talking to appellant and Juanita. Juanita said something and the three were laughing. She saw appellant slam down his beer and say that someone was coming after him. In seconds, a bunch of people were on the floor. She did not see anyone hit anyone. She saw appellant bounce up and go to the men's room looking scared, shaking and messed up. She heard James yell out that his ear had been bitten, but never heard appellant yell that he had been bitten. She saw blood on appellant but did not see any injuries on him. She went outside with Juanita and her husband. When the police arrived, she heard James saying "you got me, you got me" and they were telling him that they did not want him and that he should just go to the hospital.
Ronald Jozefowicz testified that he was the bartender that evening. He saw appellant come in at 1:45 a.m. with Sue Ward. He recalled the Ramseys coming into the bar around 8:00 or 9:00 p.m. that night. They were taking turns buying rounds of drinks all evening. Around 2:00 a.m., he heard a punch and turned to see three or four men on the floor. He saw appellant fighting for his life with about five other people. Appellant was on the bottom of the pile and two men were hitting and kicking appellant. He saw one woman slap appellant when it was almost over and yelling that he was beating her husband. Some guy came and pulled appellant out of the pile. The whole fight lasted thirty seconds to a minute. He told the Ramseys to leave by the front door. He saw appellant leave by the back door, but he did not ask him to leave. He never heard anyone yell that their ear had been bitten. A detective called once and questioned Jozefowicz about the fight, but he did not give any details. The detective said he would call again, but he never did.
Sue Ward testified that the fight broke out about ten minutes after she and appellant arrived at the bar. She saw a stranger approach appellant and punch him. She did not hear if words were exchanged because there was a lot of noise. Afterward, eight to ten people jumped on top of appellant, including four or five women. One woman had her shoe off and was beating people with it. She did not hear anyone scream; but, she also testified that she had backed away to stay out of the fight. She also did not know how the fight ended, but she did not see anyone pulling off people. The whole fight lasted eight to ten minutes. She did not see appellant leave. She saw him the next day and he had a black eye, a big bite mark on his arm, and scratches all over.
Upon a review of the evidence, appellant's counsel recognized that the jury concluded that all of the elements of the offense had been proven beyond a reasonable doubt and that appellant had not presented sufficient evidence to establish that he acted in self-defense. The jury determination of the facts in this case turned on the credibility of the witnesses, a matter solely for the trier of fact to resolve. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Therefore, the first proposed assignment of error is not well-taken.
In her second proposed assignment of error, appellant's counsel argues that appellant could argue that his appointed trial counsel rendered ineffective assistance. However, she could not delineate any instance where appellant's trial counsel did not properly represent him. Since appointed counsel is presumed to have acted competently, the defendant bears the burden of proving otherwise. State v. Lott (1990),51 Ohio St.3d 160, 175. We have reviewed the record and also do not find any basis for this argument. Therefore, appellant's second proposed assignment of error is not well-taken.
This court now has the obligation to fully examine the record in this case to determine whether the appeal is frivolous. Id. at 744. We have reviewed the entire lower court's proceedings and have determined that there is no merit to the errors alleged by appellant's appointed counsel.
In addition, our review of the record does not disclose any other errors by the trial court which would justify a reversal of the judgment. Therefore, we find this appeal to be wholly frivolous. Counsel's request to withdraw as appellate counsel is found well-taken and is hereby granted.
Having found that the trial court did not commit error prejudicial to appellant, the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J.
 Mark L. Pietrykowski, P.J., George M. Glasser, J. CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.