OPINION JUDGMENT ENTRY
{¶ 1} On June 1, 2003, appellant, William Luse, blew into a BAC Datamaster breath testing machine which registered an invalid sample. Approximately twenty minutes later, the process was repeated and appellant tested .107. He was subsequently charged with driving under the influence in violation of R.C.4511.19(A)(1) (operating a vehicle while under the influence of alcohol) and (A)(3) (operating a vehicle with a prohibited alcohol concentration). On June 6, 2003, appellant filed a motion to suppress all evidence. A hearing was held on August 1, 2003. By judgment entry filed August 6, 2003, the trial court denied said motion.
 {¶ 2} A jury trial commenced on October 16, 2003. The jury found appellant guilty as charged. Appellant then moved for a mistrial, claiming prosecutorial misconduct during closing argument. Said request was denied.
 {¶ 3} After finding the offenses were allied offenses of similar import, the trial court sentenced appellant to sixty days in jail, fifty-four suspended, and imposed a $300 fine plus court costs on the R.C. 4511.19(A)(1) charge.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "The trial court committed error and abused its discretion to the prejudice of the defendant-appellant by excluding at trial testimony by the appellant's expert witness that would have supported the contention that the intoxilizer machine was not working properly at the time of the appellant's test, thereby depriving the appellant of due process of law."
 II {¶ 6} "The trial court committed error and abused its discretion to the prejudice of the defendant-appellant by allowing remarks by the prosecuting attorney during his closing argument, which constituted misconduct that prejudicially affected substantial rights of the appellant, thereby denying him a fair trial, and then by overruling the appellant's motion for mistrial."
 I {¶ 7} Appellant claims the trial court erred in denying the testimony of his expert, Alfred Staubus, concerning the possible causes for the BAC Datamaster machine to register an "invalid sample" result.
 {¶ 8} The trial court sentenced appellant on the R.C.4511.19(A)(1) charge after finding the two offenses were allied offenses of similar import:
 {¶ 9} "With regard to — and for the record, the A and B charges, obviously the court finds that they are allied offenses. I'm only — (inaudible) sentences to both. So I'm only sentencing on the — up under the influence case. Although I could technically sentence on either case, I'll sentence on the under the influence case." Vol. II T. at 239-240.[1]
 {¶ 10} Therefore, any testimony concerning the possible causes of the "invalid sample" would not have any relation to the charge the trial court sentenced appellant for.
 {¶ 11} Appellant acknowledges this, but argues the evidence on the R.C. 4511.191(A)(1) charge was so weak the breathalyzer evidence prejudiced his right to a fair trial. Appellant also argued this at sentencing. Therefore, we will proceed to examine the record on the issue of weight of the evidence presented in the R.C. 4511.191(A)(1) charge.
 {¶ 12} Appellant was first observed going into a left turn lane and then coming out of the turn lane in a "fairly quick maneuver." Vol. I T. at 125. The officer in question turned to follow appellant and observed his "vehicle drop to the right side of the roadway, and the front and rear tires on the right-hand side of the vehicle crossed over the white fog line." Id. at 127. The vehicle then proceeded around a curve, crossing over a double yellow line three times. Id. at 128. The officer observed that even when traveling within its lane of the travel, the vehicle was "going back and forth." Id. at 129. When the officer attempted to stop appellant, the vehicle slowed, pulled to the side of the road and then pulled back on the road proceeding some 200 feet before stopping. Id. at 130-131. While talking to appellant, the officer "noticed a strong odor of alcoholic beverage coming from his breath and body." Id. at 132. When questioned about drinking, appellant admitted to "a couple drinks at a wedding." Id. at 133. When asked to step to the back of his vehicle, appellant appeared "groggy" and his gate was slow. Id. at 135.
 {¶ 13} The officer opined that appellant appeared intoxicated. Id. at 136. When performing the walk and turn test, appellant could not hold the initial position, "swaying back and forth" and using his foot "to keep his balance so he wouldn't fall down." Id. at 140. He did not "touch heel to toe," stepped off the line four times, and had to steady himself from "swaying and losing his balance." Id. at 141-143. When performing the one leg stand test, appellant was unsteady, swaying and repeatedly placed his foot down for balance. Id. at 144.
 {¶ 14} Another officer who arrived to assist also noted an odor of alcohol about appellant. Id. at 218. He noticed appellant was "unsteady on his feet" and "swayed back and forth and side to side." Id. at 219. This officer administered the horizontal gaze nystagmus test and found that appellant "lacked smooth pursuit in both the right and the left eye" and had "pronounced jerking at maximum deviation" in each eye. Id. at 221-222. Appellant tested positive for four out of six clues, indicating impairment due to alcohol. Id. at 222-223.
 {¶ 15} Appellant's wife, a passenger in the vehicle at the time of the stop, testified her husband sways all the time because he is always standing on concrete floors, and pulled out of the left turn lane because they decided to go straight home instead of making a stop. Id. at 317, 322-323. She testified appellant appeared to be fine when they departed the wedding. Id. at 345-346.
 {¶ 16} Despite the undisputed testimony of his actions and demeanor during the stop, appellant argues he was unduly prejudiced by the state's cross-examination of Dr. Staubus. Although the trial court ruled Dr. Staubus could not testify as to the possible causes of the breathalyzer's malfunction, appellant put him on the witness stand and qualified him as an expert on the effects of alcohol in the body.[2] Vol. II T. at 123. Based on his calculations, Dr. Staubus testified the four drinks consumed by appellant should not have caused as high a reading on the BAC Datamaster machine. Id. at 134-135.
 {¶ 17} During cross-examination, the state asked Dr. Staubus about appellant's .107 test result. Id. at 152. Dr. Staubus agreed such a result "would be considered impaired" and he would "most likely not" get into a vehicle "with somebody that was at .107." Id. Appellant claims this testimony created an undue prejudice in the R.C. 4511.191(A)(1) case that the jury could not separate.
 {¶ 18} We note from the outset of the trial the jury was cautioned to consider each count separately. Vol. I T. at 33; Vol. II T. at 213, 216-217. The testimony of appellant's driving, demeanor and field sobriety tests is sufficient to establish beyond a reasonable doubt the R.C. 4511.191(A)(1) charge. Therefore, because appellant was sentenced on this offense only and the evidence more than adequately supports the verdict, we find no undue prejudice to appellant.
 {¶ 19} The argument that appellant's expert should have been permitted to explain the possible causes for the "invalid test" fails because it is irrelevant to the charge appellant was sentenced on.
 {¶ 20} Assignment of Error I is denied.
 II {¶ 21} Appellant claims prosecutorial misconduct during closing argument. We disagree.
 {¶ 22} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990),51 Ohio St.3d 160, certiorari denied (1990), 112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the contest of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168.
 {¶ 23} Appellant complains of the following statements made by the prosecutor during closing:
 {¶ 24} "* * * They read him this BMV 2255 form, and he takes this test. Now we get to the test. This case has been litigated and litigated to death at this point. This machine has been challenged today. This test has been challenged over and over again, and at every stage of this proceeding, it's been found to come into evidence. You're going to have it in evidence with you.
 {¶ 25} "* * *
 {¶ 26} "Now, they hired an expert witness, folks, Dr. Albert Staubus, who I don't dispute his scientific credentials at all. But he told you that he has one of these machines in his laboratory. He tests students on it. He tests other people on it. It's based on good science. They hired an expert and they paid him $200 an hour, we're talking upwards of $1,000 for the amount of time he was here, and he told you from that witness stand not one single shred of actual evidence that anything was wrong with this machine. And if anybody would know it, their expert would. And if there were any evidence, anything wrong with this machine or this test, he would have told you about it." Vol. II T. at 166 and 168-169, respectively.
 {¶ 27} We note immediately after this statement, the trial court cautioned the jury that remarks made in closing argument do not constitute evidence. Id. at 169. We find the matter was properly handled by the trial court. Further, based upon our decision in Assignment of Error I, the arguments in this assignment are moot.
 {¶ 28} Assignment of Error II is denied.
 {¶ 29} The judgment of the Municipal Court of Delaware County, Ohio is hereby affirmed.
Farmer, J. Gwin, P.J. and Hoffman, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Municipal Court of Delaware County, Ohio is affirmed.
[1] We reference the record during sentencing as opposed to the October 17, 2003 judgment entry because it is illegible. Pursuant to Loc.App.R.9(A)(1), "Handwritten judgment entries are inappropriate and shall not be considered by this Court except for uniform traffic citations."
[2] The trial court permitted Dr. Staubus to testify on the reasons for invalid samples to impeach the officer's testimony on this issue. Vol. II T. at 32-35, 144-149.