[Cite as *State v. Shabazz*, 2011-Ohio-2919.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 95567 and 95588**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KAREEM A. SHABAZZ

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-533075 and CR-528852

**BEFORE:**   S. Gallagher, J., Blackmon, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   June 16, 2011

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio   44114

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Jeffrey S. Schnatter
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

SEAN C. GALLAGHER, J.:

{¶ 1}  Appellant Kareem Shabazz appeals his convictions and sentences in two underlying criminal cases that are consolidated for review, Cuyahoga County Common Pleas Case Nos. CR-528852 and CR-533075.   For the reasons stated herein, we affirm both cases.

{¶ 2}  Appellant was indicted in CR-528852 on September 25, 2009, on seven counts of kidnapping, seven counts of aggravated robbery, one count of

felonious assault, all with one- and three-year firearm specifications and a forfeiture clause, and one count of having a weapon under disability with a forfeiture clause. This case arose from incidents that occurred on March 17 and 18, 2009.

{¶ 3} Appellant was indicted in CR-533075 on January 29, 2009, on one count of attempted murder, two counts of felonious assault, two counts of aggravated robbery, all with one- and three-year firearm specifications, and one count of having a weapon while under disability. This case arose from an incident that occurred on April 16, 2009.

{¶ 4} The trial court granted the state's motion to consolidate the cases for trial and subsequently denied appellant's objection to the joinder of cases. At trial, testimony and evidence were presented concerning the incidents that occurred in March and April 2009.

{¶ 5} The first incident occurred at a Speedway store in Maple Heights on March 17, 2009. On that date, Samantha Malinowski was working as a sales clerk. Around 10:00 p.m., she heard a customer say, "Oh, God," and observed someone pointing a gun at the customer and saying, "get back." She testified that a man, whom she identified as appellant, asked for all the money out of her register, told her to open a second register, pointed the gun at her head, and threatened her. He also told Malinowski to open a safe, but she told him she was not able to open it. Another robber was in the store,

and two customers were present. About $150 was stolen, along with Black & Milds and other items worth almost $400.

{¶ 6} Malinowski identified the gun that was used and testified to video surveillance of the incident. She indicated that appellant was wearing a hoodie, he had a baseball cap on, and he had a bandanna wrapped around his face. She was able to look him straight in the eyes. The second robber had on a black hoodie and a pair of jeans.

{¶ 7} Jessie McAlpine was the customer who was told to get back in the store. She corroborated Malinowski's account of the robbery. She described the man who pointed the gun as being 5'8" tall, on the slim side, and wearing a black hoodie and blue jeans with a scarf over his face.

{¶ 8} Jerome Nolan was the other customer in the store. He heard someone at the door telling a woman to back up and then telling him, "if you turn around, I'll blow your brains out." At one point, Nolan looked over and saw a tall and slender man with a mask across his face who was holding a gun. Nolan identified the gun in court. He heard the man telling the clerk to open the registers and threatening her. Nolan also heard a second person in the store behind him. When the assailants left the store, Nolan observed them jump into a car and pull off.

{¶ 9} The police arrived a few minutes after the assailants left. Maple Heights Officer Paul Hobart was one of the responding officers. He took

statements from Malinowski and the two customers. Maple Heights Detective Jeff Canter prepared a photo lineup depicting six individuals, one of whom was the police suspect. The photo lineup was presented to Malinowski, who identified person number three, which was the picture of appellant, as one of the robbers. Det. Canter took a buccal swab sample from appellant and sent it to the Ohio Bureau of Criminal Identification ("BCI") for analysis.

{ ¶ 10} The second incident occurred the next day, March 18, 2009, at a Convenient Food Mart in Maple Heights. Mohammad Raja, the night shift manager, testified to a robbery that occurred around 10:34 p.m. He was working with a woman named Julia Jacobs, who was working at the register that night. Two of their acquaintances, Thomas Hamlet and Jason Zoul, were also present. Raja was in the back of the store when he heard screaming. Jason told him two men were in the store with guns, and when Raja looked back, he saw a man pointing a gun. Raja ran outside the building with Thomas and Jason and called 911. He then saw two men run out of the store and heard one of them fire a shot at Jason. Raja watched the assailants run across the street and jump over a fence. He indicated that both were wearing heavy blue jackets, hoodies, and bandannas. He testified to video surveillance of the incident, which depicted the men robbing the store. One of the men had a pair of gloves on and was pointing a gun at

Jacobs. The items taken included 30 packs of Black and Milds, a couple hundred dollars' worth of lottery tickets, and about $80 in change.

{¶ 11} Jacobs testified she was working at the Convenient Food Mart at the time of the robbery. She stated two black men with guns entered the store. She indicated the men were "smaller build" and were wearing bandannas over their faces, dark sunglasses, and flannel shirts. One of the men came behind the counter, pointed a gun at Jacobs's head, and told her to open the registers or he would "blow her brains out." He told her to open the safe, but she could not. The men grabbed lottery tickets and other items and then took off.

{¶ 12} Jason Zoul testified that he witnessed the robbery. He saw a man carrying a gun enter the store. The man was wearing a black hoodie and had a bandanna masking the bottom of his face. He indicated the gun was a semiautomatic handgun, maybe a .40 caliber, and he identified the gun in court. He heard the man say, "give me the money," or something to that effect. He also noticed a second man had entered the store. Jason was able to get to the back of the store; he told Raja what was happening; and he was able to run out the back door and call the police. He observed the two males exit the store and informed the dispatcher of the direction they headed. The male with the gun fired a shot at Jason, but he was not hit. Jason observed the male running down Corden Avenue and carrying a bag.

{¶ 13} Maple Heights Lieutenant Todd Hansen responded to a dispatch of an armed robbery at the Convenient Food Mart. Officer Alexander Casey also responded to the scene. A canine unit was called, and the police went looking in the direction the suspects had fled. Among the items recovered were a black semiautomatic gun, a black hooded sweatshirt, two pairs of gloves, a single bandanna and two other bandannas that were tied together, and a bag containing lottery tickets, money, and cigarillos stolen from the store. The evidence was found in an area two or three blocks from the store.

{¶ 14} Jonathon Gardner is a forensic scientist and firearms examiner with the BCI. He test-fired the gun that was recovered. He indicated that the gun was a .380 automatic caliber, High Point brand pistol and that it was operable.

{¶ 15} Heather Bizub is employed by the BCI as a forensic scientist in the biology DNA section. She tested evidence submitted in connection with the robbery of the Convenient Food Mart and Speedway stores. She testified the gun had a mixture of DNA of three people, at least one of whom was a male. She could not conclude whether or not appellant was one of the sources of DNA. She made the same determination as to the black pair of gloves.

{¶ 16} The DNA on one of the bandannas and the hooded sweatshirt was a mixture with at least one source being male. Appellant was excluded from being a possible source of DNA on these items.

{¶ 17} On the other two bandannas, Bizub found a mixture of DNA with the major profile being consistent with appellant. The DNA profile would appear once in 11,660,000,000,000,000,000 people. No DNA was found during the initial testing of the gray gloves, but upon retesting, a partial DNA profile was obtained that was consistent with contributions from appellant and at least one other person.

{¶ 18} Maple Heights Detective Allen Henderson investigated the Convenient Food Mart and Speedway robberies. He reviewed the surveillance videos and noted commonalities between the two robberies. He stated the gun was unique and it was obvious the same gun was used in both robberies. He noted the suspects wore similar disguises, including dark bandannas over the lower portion of their faces and gloves. In both cases, the suspect put the gun to the head of the clerk, threatened the clerk, and used the same method to commit the crimes. When appellant was arrested, a Los Angeles Dodgers baseball cap was discovered in his car. A black hooded jacket was found during the search of an apartment where appellant had been staying. These items resembled those depicted in the video of the Speedway robbery.

{¶ 19} The third incident occurred in the area of East 139th Street and Thornhurst in Garfield Heights on April 16, 2009. Anthony Steele was visiting his grandmother and left her house around 10:45 p.m. As he was walking, two men approached him. One of the men pulled out a gun and shot Steele in his left leg. Steele turned to run and was shot again. Steele testified that the man who shot him was slimmer than he was and approximately 5'9" to 5'11" tall. After the gunman threatened to kill Steele, he handed the men his wallet and cell phone, and the men took off running. Steele saw a dark-colored Dodge Magnum pull up and do a U-turn in the street. Steele was losing a lot of blood and blacked out on the porch of a house. An ambulance arrived, and he was taken to the hospital.

{¶ 20} Lakeeka Vason lives in the vicinity of the shooting. She heard a "pop" and looked out her window. She saw a man with a gun standing over the victim. She watched the man shoot the victim a second time before he took off running. She indicated the shooter was not over six feet tall, was thin built, and appeared to be an African-American. He had on dark clothes and had something on his head. The next day she noticed a bullet hole in her house and a bullet on her porch.

{¶ 21} Garfield Heights Sergeant David Bailey responded to the shooting. He found the victim lying face down on the sidewalk with a "pretty

good pool of blood." The victim came in and out of consciousness. He told Sgt. Bailey that he had been shot and robbed.

{¶ 22} Garfield Heights Officer Michael Danzey collected evidence at the scene. Among the items he recovered were .9 millimeter shell casings.

{¶ 23} David Merritt testified as part of a plea agreement he made in another case. He stated that he was with appellant and Derrell Shabazz at the time of the shooting and that they were driving in a dark blue Magnum through a residential neighborhood in Garfield Heights. He stated the car stopped and appellant jumped out and went up the street. He saw that appellant had a gun and fired two shots. Appellant ran back to the car and jumped in with "bloody money in his hand." Merritt also testified there was another time he was in a car with appellant. They passed a gas station, and appellant stated he had robbed it. Merritt previously testified against appellant in regard to the robbery of a Dollar General store. He had received threats about testifying in the instant case.

{¶ 24} Derrell Shabazz is the appellant's nephew. He testified he did not know about the April 16th robbery. He stated he was in Atlanta for a week in April but did not know the exact dates. He provided the police with documents. However, Det. Henderson was only able to verify that Derrell was in Atlanta April 19, 20, and 21, 2009, and he was not able to corroborate Derrell's presence in Atlanta on April 16, 2009. Derrell admitted he owned a

green Dodge Magnum at that time. Derrell stated he received a text from appellant on April 20th saying he had just hit a "five grand lick." Derrell admitted he had been intimidated by members of appellant's family for providing testimony in a past trial against appellant. During a recorded phone call between Derrell and appellant from county jail, appellant responded to Derrell that "you can't fabricate that much."

{¶ 25} Appellant testified on his own behalf. He denied any involvement in the robberies and claimed the items containing DNA did not belong to him. He stated he was in Dayton with his family on March 17 and 18, 2009.

{¶ 26} During trial, the state dismissed three of the kidnapping counts (Counts 7, 10, and 14) and two of the aggravated robbery counts (Counts 11 and 15) in CR-528852. The court granted a Crim.R. 29 motion on three of the aggravated robbery counts (Counts 2, 4, and 8) in that case. The jury returned a verdict of guilty on the remaining charges with the attendant gun specifications in CR-528852 (Counts 1, 3, 5, 6, 9, 12, 13, and 16). At sentencing, the trial court merged Counts 5 and 6 (kidnapping and felonious assault) and Counts 12 and 13 (kidnapping and felonious assault). The trial court imposed an aggregate prison sentence of 55 years.

{¶ 27} The jury returned a verdict of not guilty of attempted murder (Count 1) and guilty on all other charges and specifications (Counts 2 through

6) in CR-533075. At sentencing, the trial court merged Counts 2 and 3 (both felonious assault) and Counts 4 and 5 (both aggravated robbery). The court sentenced appellant to a total prison term of 26 years. The trial court ordered the sentence in each case to run consecutive to the other.

{¶ 28} Appellant timely filed this appeal. He raises six assignments of error for our review. His first assignment of error provides as follows: "Appellant was denied his right to a fair trial * * * when the trial court failed to order separate trials."

{¶ 29} Under Crim.R. 13, two or more indictments may be tried together if the offenses could have been joined in a single indictment. Crim.R. 8(A) allows for the joinder of multiple offenses in the same indictment "if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Generally, the law favors joining multiple offenses in a single trial if the offenses are "of the same or similar character." *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293.

{¶ 30} When joinder is otherwise proper, a defendant may move to sever under Crim.R. 14 if he can demonstrate prejudice to his rights. "The state may rebut a defendant's claim of prejudicial joinder in two ways. First, if in separate trials the state could introduce evidence of the joined offenses as

'other acts' under Evid.R. 404(B), a defendant cannot claim prejudice from the joinder. *Lott*, 51 Ohio St.3d at 163, 555 N.E.2d 293. Second, the state can refute prejudice by showing that 'evidence of each crime joined at trial is simple and direct.' Id." *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, ¶ 198. "Under the second method, the 'joinder' test, the state is not required to meet the stricter 'other acts' admissibility test, but is merely required to show that evidence of each crime joined at trial is simple and direct. Thus, when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under Evid.R. 404(B)." (Internal citations omitted.) *Lott*, 51 Ohio St.3d at 163. A denial of severance is reviewed for an abuse of discretion. See *Fry*, 125 Ohio St.3d 163, at ¶ 197.

{¶ 31} In this case, joinder of the cases was proper because the offenses were of the same or a similar character and were part of the same course of criminal conduct. Each of the three incidents involved an aggravated robbery, two of stores and one of an individual, in which a gun was used and money was stolen. The incidents occurred within a 30-day time period and occurred within the same general vicinity. Moreover, appellant has failed to demonstrate prejudice by the joinder. The evidence reflects that three straight-forward robberies occurred, the evidence involving each incident was simple and direct, and there is no indication from the record that the jury

confused the evidence.   Accordingly, we overrule appellant's first assignment of error.

{¶ 32} Appellant's second assignment of error provides as follows:   "The trial court committed reversible error when it failed to give the jury the accomplice testimony instruction."

{¶ 33} Appellant argues the trial court should have given an accomplice instruction because of David Merritt's testimony.   Merritt testified he was in the vehicle with appellant at the time of the robbery and shooting of Anthony Steele.   He also was involved with appellant in a prior case involving a Dollar General store.   He was not indicted as an accomplice, and there is no complicity charge herein.

{¶ 34} Trial courts are not required to give the accomplice instruction set forth in R.C. 2923.03(D) unless the witness has been indicted as an accomplice in relation to the defendant's criminal activity.   *State v. Jennings*, Franklin App. Nos. 09AP-70 and 09AP-75, 2009-Ohio-6840, ¶ 62-66.   The Ohio Supreme Court has recognized that in order to be an "accomplice" one must, at the very least, be a person indicted for the crime of complicity. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, at ¶ 131. Because Merritt was not charged with any offense related to crimes in this case, the trial court did not err in failing to give the accomplice instruction. Moreover, even if Merritt could be considered an accomplice, we recognize

that his testimony concerning the April 16th incident was corroborated by the victim and an independent eyewitness, the jury was aware that Merritt had agreed to testify against the defendant as part of a plea agreement he made in another case, and the trial court properly instructed the jury on credibility and witness testimony. Therefore we find no reversible error occurred. Appellant's second assignment of error is overruled.

{¶ 35} Under appellant's third and fourth assignments of error, he challenges his convictions as being against the sufficiency and manifest weight of the evidence.

{¶ 36} When an appellate court reviews a claim of insufficient evidence, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 37} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements

have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal citations and quotations omitted.) *Leonard*, 104 Ohio St.3d 54, at ¶ 81.

{¶ 38} Appellant does not raise any challenges pertaining to the elements of the crimes, but instead argues there was a lack of physical evidence linking him to the crimes. He asserts that the culprit wore a disguise and the witness who identified him only saw his eyes. He further claims the testimony of Merritt was not credible. He believes the jury merely wanted to hold someone accountable for the crimes that were committed.

{¶ 39} Upon our review of the record, we find there was ample evidence linking appellant to the crimes. The victims and eyewitnesses gave similar physical descriptions of the primary assailant; appellant was identified from a photo lineup by a victim who looked him straight in the eyes; it appeared the same gun was used and a similar disguise was worn in the store robberies; DNA consistent with appellant's profile was found on items linked to the store robberies; and items resembling those worn by the assailant were found at the time of appellant's arrest. Further, it is evident from the record that

the jury was able to assess Merritt's credibility. The jury was informed that Merritt testified as part of a plea agreement and heard testimony concerning his criminal past. Merritt's testimony was consistent with the testimony of other witnesses concerning the April 16th incident. After thoroughly reviewing the record in this case, as detailed above, we cannot say that appellant's convictions were against the sufficiency or manifest weight of the evidence. Appellant's third and fourth assignments of error are overruled.

{¶ 40} Appellant's fifth assignment of error challenges his total prison sentence of 81 years as being excessive and contrary to law, and his sixth assignment of error challenges the imposition of consecutive sentences without judicial fact-finding. We find no merit to these arguments.

{¶ 41} In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the Ohio Supreme Court set forth a two-step procedure for reviewing felony sentences, as follows: "* * * First, [appellate courts] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse of discretion standard." Id. at ¶ 4.

{¶ 42} Appellant was convicted of numerous offenses arising from the three incidents. The trial court heard arguments from counsel regarding the

sentencing factors, and the sentencing entry reflects that the court considered all the required factors of the law and found that prison was consistent with the purpose of R.C. 2929.11. The sentence imposed by the trial court for each offense was within the permissible statutory range. Appellant provided no evidence to the trial court of sentences given to similarly situated offenders. Upon this record, we cannot conclude that his sentence was contrary to law.

{¶ 43} In addition, the record reflects that the trial court merged a number of related charges and found consecutive sentences were appropriate in light of each individual who was terrorized by appellant's criminal behavior. The trial court was not required to engage in judicial fact-finding prior to imposing consecutive sentences. *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, paragraph three of the syllabus. Further, the court had full discretion to impose a prison sentence within the statutory range. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of syllabus. Accordingly, we cannot say that the total term was excessive or an abuse of its discretion. Appellant's fifth and sixth assignments of error are overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

PATRICIA ANN BLACKMON, P.J., and
KENNETH A. ROCCO, J., CONCUR