[Cite as *State v. Carson*, 2011-Ohio-4989.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| STATE OF OHIO | | C.A. No. 10CA0094-M |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| WILLIAM R. CARSON, JR. | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No. 08CR0577 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2011

DICKINSON, Judge.

INTRODUCTION

{¶1} Police sergeant Nathan Simpson saw William Carson attempting to open a sliding glass door at the back of Linda Toporowsky's house. When Mr. Carson heard Sergeant Simpson approaching, he ran. The Grand Jury indicted Mr. Carson for burglary, attempted burglary, breaking and entering, and possessing criminal tools. A jury convicted him of attempted burglary and criminal trespassing, and the trial court sentenced him to one year in prison. Mr. Carson has appealed, arguing that his attempted burglary conviction was not supported by sufficient evidence and is against the manifest weight of the evidence. We affirm because there was sufficient evidence presented at trial to convict him of attempted burglary and his conviction is not against the manifest weight of the evidence.

FACTS

{¶2}    In the early morning hours of December 15, 2008, Deanne Wallick was lying on a couch in her family room, trying to rest despite feeling ill from being pregnant.  She heard a noise and looked up to see a person standing in the entryway.  At first she thought it was her husband, but the person did not do any of the things her husband would normally do when he came downstairs.  When the person went into the dining room, she ran upstairs, woke her husband, and called 911.  Police searched the house, but did not find anyone inside.  During their investigation, they noticed that a door from the kitchen to the garage and a door from the garage to the outside were open.

{¶3}    As officers were standing in Ms. Wallick's driveway discussing the incident, they received a dispatch regarding a house on the next street over.  Jennifer Woodard had called 911 to report that there was a minivan parked at the end of her driveway, preventing her from leaving for work.  The officers responded and determined that the van was registered to Alfred Clark of Akron.  The officers decided to withdraw from the scene and wait to see if anyone approached the van.  As Sergeant Simpson was watching the van from the porch of Ms. Woodard's house, he saw a man emerge from between two houses across the street.  He saw the man walk up the street and approach the front door of a house until a motion-sensor light turned on.  When the light turned on, the man quickly put one hand in his pocket, turned around and walked away.  Sergeant Simpson then saw the man walk around the back of the house.

{¶4}    Sergeant Simpson followed the man to the backyard, but briefly lost sight of him when the man turned a corner.  When the sergeant entered the backyard, he heard the sound of a sliding door.  He saw the man that he had been following attempting to open a sliding door at the back of Ms. Toporowsky's house.  He tried to sneak up on the man, but stepped on some

branches that gave away his position. When the man at the sliding door looked back, Sergeant Simpson told him that he was under arrest. The man ran and Sergeant Simpson chased him. When the man refused to stop, the sergeant deployed his Taser. The other officers arrived soon after and handcuffed the man, who identified himself as Mr. Carson. Mr. Carson told the officers that he lived on Cree and was out looking for his dog. After being informed that there is no road named Cree in Medina, Mr. Carson was silent. At the station, Mr. Carson admitted that Alfred Clark is his brother and that he had driven the van to its location, claiming that he was dropping off a woman named Vicki. The officers determined that Mr. Carson lived on Cree Avenue in Akron.

SUFFICIENCY

{¶5} Mr. Carson's first assignment of error is that the evidence at trial was insufficient to convict him of attempted burglary. Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of Mr. Carson's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶6} The jury convicted Mr. Carson of attempted burglary under Sections 2911.12(A)(4) and 2923.02(A) of the Ohio Revised Code. Under Section 2911.12(A)(4), "[n]o person, by force, stealth, or deception, shall . . . [t]respass in a permanent . . . habitation of any person when any person other than an accomplice of the offender is present or likely to be present." Under Section 2923.02(A), "[n]o person, purposely or knowingly, and when purpose

or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶7}  Mr. Carson has argued that there was no evidence that he purposely or knowingly attempted to burglarize Ms. Toporowsky's house.  "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."  R.C. 2901.22(A).  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist."  R.C. 2901.22(B).  According to Mr. Carson, there was no evidence that he did not think Ms. Toporowsky's house was his own, that he knew it belonged to someone else, or that it was his intention to enter the house.

{¶8}  Although there was no direct evidence of Mr. Carson's intent, there was sufficient circumstantial evidence to support his conviction.  See *State v. Jenks*, 61 Ohio St. 3d 259, paragraph one of the syllabus (1991) ("Circumstantial evidence and direct evidence inherently possess the same probative value . . . .").  Sergeant Simpson saw Mr. Carson emerge from between two houses in the dark, approach another house, suddenly turn around when a light turned on, go around to the back of that house, and heard him open a sliding door at the back of Ms. Toporowsky's house.  According to Ms. Toporowsky, the door that Mr. Carson was at has both a screen and glass door, and it was the screen door that Mr. Carson opened.  In addition, when Sergeant Simpson told Mr. Carson to stop what he was doing, Mr. Carson ran.  The Ohio Supreme Court has held that "flight . . . [is] . . . evidence of consciousness of guilt, and thus of guilt itself."  *State v. Hand*, 107 Ohio St. 3d 378, 2006-Ohio-18, at ¶167 (quoting *State v. Eaton*,

19 Ohio St. 2d 145, 160 (1969), vacated in part on other grounds, 408 U.S. 935 (1972)). When asked what he was doing, Mr. Carson lied about living in the neighborhood and later changed his explanation for why he was in the area. We conclude that there was sufficient evidence from which the jury could infer that Mr. Carson purposely or knowingly attempted to trespass in the permanent habitation of another when another person was likely to be present. His first assignment of error is overruled.

## MANIFEST WEIGHT

**{¶9}** Mr. Carson's second assignment of error is that his attempted burglary conviction is against the manifest weight of the evidence. If a defendant argues that his convictions are against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986).

**{¶10}** Mr. Carson has noted that officers testified that his breath smelled like alcohol at the time of his arrest. He has argued that, if he intended to burglarize Ms. Toporowsky's house, it would not have made sense for him to be intoxicated because it would make it more likely that he would make a mistake. Mr. Carson has also argued that the alcohol on his breath suggests that he may have mistakenly thought he was in his own neighborhood.

**{¶11}** Mr. Carson has noted that he had gloves in his pocket when he was arrested. He has argued that, if he was intending to burglarize a house, he would have worn the gloves to avoid fingerprints. He has also noted that he gave the officers his real name and address after he was caught, indicating that he was not trying to hide his identity. He has further argued that, if

he was intending to burglarize a house, it would have made more sense for him to park in the street instead of at the end of someone's driveway.

{¶12} Regarding Mr. Carson's breath, while the officers testified that it smelled of alcohol, none of them said that he appeared intoxicated. Regarding the location of the minivan, Sergeant Simpson testified that it is illegal to park on a city street from 2:00 a.m. to 5:00 a.m. Accordingly, if Mr. Carson had parked the minivan in the street, it may have called attention to itself even sooner. Regarding the gloves, Sergeant Simpson did not say whether Mr. Carson was wearing gloves when he saw him at the sliding door, leaving open the possibility that Mr. Carson removed them from his hands while he was trying to get away. Finally, regarding Mr. Carson's identity, although he may have told the officers his name and the name of the street on which he lived, he also told them that the street was located in Medina when, in fact, it was in Akron.

{¶13} Having reviewed the evidence presented at trial, we conclude that the jury did not lose its way when it found that Mr. Carson attempted to commit burglary. Mr. Carson's second assignment of error is overruled.

## CONCLUSION

{¶14} Mr. Carson's attempted burglary conviction was supported by sufficient evidence and is not against the manifest weight of the evidence. The judgment of the Medina County Common Pleas Court is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CLAIR E. DICKINSON
FOR THE COURT


BELFANCE, P. J.
MOORE, J.
CONCUR

APPEARANCES:

FADI G. BOUMITRI, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW KERN, Assistant Prosecuting Attorney, for Appellee.