[Cite as *State v. Bronczyk*, 2011-Ohio-5924.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96326**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOSEPH J. BRONCZYK

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART, MODIFIED IN PART, REVERSED IN PART AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-540345

**BEFORE:** Rocco, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 17, 2011

**ATTORNEY FOR APPELLANT**

Jennifer J. Scott
P.O. Box 770403
Lakewood, Ohio 44107

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Holly M. Welsh
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

**{¶ 1}** Defendant-appellant Joseph Bronczyk appeals from his convictions for burglary, theft, attempted burglary, possession of criminal tools, and tampering with evidence, and from the eight-year prison term the trial court imposed for those convictions.

**{¶ 2}** Bronczyk presents six assignments of error. He claims his trial counsel rendered ineffective assistance, his convictions are not supported by either sufficient evidence or the manifest weight of the evidence, the introduction into evidence of one of the state's exhibits violated his "right to

remain silent," and the trial court failed to comply with statutory requirements in sentencing him.

**{¶ 3}** Upon a review of the record, this court cannot agree that Bronczyk's trial counsel was ineffective. In addition, Bronczyk's convictions for burglary, attempted burglary, and possession of criminal tools are supported by the evidence. However, the state failed to present sufficient evidence to prove the allegations of the furthermore clause set forth in Count 2, theft, and failed to present sufficient evidence to support Bronczyk's conviction for tampering with evidence.

**{¶ 4}** This disposition requires a modification of Bronczyk's conviction on Count 2, and reversal of his conviction on Count 6. Except with respect to Bronczyk's convictions on Counts 2 and 6, his arguments with respect to the trial court's imposition of sentence are rejected. Bronczyk's convictions and sentences, therefore, are affirmed in part, modified in part, and reversed in part, and this case is remanded for resentencing consistent with this opinion.

**{¶ 5}** Bronczyk's convictions in this case result from two separate incidents. The first occurred on the afternoon of July 15, 2010.

**{¶ 6}** Antoinette Finding testified that she was reading the newspaper at her kitchen table when she looked out her window and noticed activity taking place across the street at her neighbor's house. A man, whom she

recognized as Bronczyk, was walking around Eugene Mueller's yard. As Finding watched, Bronczyk picked up a ladder lying in the front lawn, then carried the ladder around to the rear of Mueller's house.

{¶ 7} Soon thereafter, Finding saw Bronczyk climb onto the roof of the "breezeway" that connected Mueller's garage to his house. Bronczyk crossed the roof to the house's second-floor window, lifted, and disappeared into Mueller's house. Finding called the Parma police.

{¶ 8} A few minutes later, two police officers arrived at Mueller's house, viz., Eric Jezior and Edward Pinc. They walked around the property, noticing a ladder against the rear of the house. When the officers looked up to the second floor, they saw Bronczyk exiting backwards from the window.

{¶ 9} Jezior immediately called out to Bronczyk, who appeared to be "startled" at the sound. The officers asked him to come down; they moved the ladder slightly to better facilitate the process. Bronczyk explained to the officers that he was doing work around the house for Mueller, went up to the roof, and "couldn't get to the ladder to get down, so he was going through the house to come downstairs and unlock a door" to let himself out.

{¶ 10} Bronczyk's explanation made little sense to the officers, since they saw him emerge from the window, and since the ladder had been propped against the roof within his reach. They proceeded to contact

Mueller by telephone. Mueller confirmed that he had hired Bronczyk to do some outside chores, but indicated Bronczyk had no reason to be inside the house. Nevertheless, Mueller told the officers that he wanted to speak to Bronczyk before taking any action, so the two officers left.

{¶ 11} When Mueller returned to the house after work, Bronczyk came over and told him that the reason "he pried the window up" was because "the ladder fell off the garage roof." Mueller initially believed Bronczyk, but subsequently noticed some items inside the house were moved. In particular, Mueller saw that "a Sony camera and two diamond rings" were in a cardboard box placed near the window that Bronczyk had opened.

{¶ 12} After making this discovery, Mueller went to the police station and wrote out a complaint. Officer Oliver Simic investigated Mueller's complaint on July 17, 2010. Simic spoke to Finding and Mueller, took photographs of the exterior of Mueller's house, and photographed the items inside the box near the window. A warrant was issued for Bronczyk's arrest.

{¶ 13} The second incident occurred on the afternoon of July 31, 2010. Angel Williams testified she lived in Parma on Theota Avenue. Her address was "four blocks" east of Bronczyk's residence. She went into her kitchen to "grab something to eat" and, as she looked out the window, she saw "a strange man," later identified as Bronczyk, enter her backyard.

{¶ 14} At first, Williams thought Bronczyk might be searching for a lost pet, but then she heard "the handle of [her] screen door in the back jiggle." She approached her rear door, and, looking through the glass panes, "saw this man trying to get into the window of [her] children's bedroom." Williams called 911.

{¶ 15} While she was on the telephone, Bronczyk returned to "the back stoop with a screwdriver in his hand." She stepped closer to her rear door, and she and Bronczyk "were face-to-face with the glass of the door between us." Bronczyk saw Williams standing there with a telephone; "he ran."

{¶ 16} Pinc was one of the officers who heard the radio broadcast about Williams's call. He advised his colleagues that the description of both the incident and the suspect were similar to an earlier incident in which he had been involved. Pinc provided Bronczyk's address to the other officers.

{¶ 17} Officer Thomas O'Grady drove to the street where Bronczyk resided. As O'Grady turned onto the street, he saw Bronczyk walking toward his home across a neighbor's lawn. Bronczyk approached the side door of his home as O'Grady drove into Bronczyk's driveway. Although O'Grady stopped and ordered Bronczyk to remain outside, Bronczyk replied "he's not going to jail," and entered his home. O'Grady and another responding officer eventually forced their way into the house to arrest

Bronczyk. After the arrest, O'Grady observed a screwdriver on the driveway on "the right side of the side door"; he took the tool as evidence.

{¶ 18} Parma police officers retrieved Williams and conducted a "cold stand." Williams asked the officers to move Bronczyk a little closer before she identified him as the man who attempted to enter her home.

{¶ 19} Bronczyk subsequently was indicted on six counts, i.e., 1) burglary, with a notice of prior conviction ("NPC") and a repeat violent offender specification ("RVO"); 2) theft, with a furthermore clause alleging that the victim was an elderly person and that the value of the property was between $500 and $5,000; 3) possession of criminal tools, to wit: a ladder, with a furthermore clause that the offense occurred in the commission of a felony; 4) attempted burglary; 5) possession of criminal tools, to wit: a screwdriver, with a furthermore clause that the offense occurred in the commission of a felony; and, 6) tampering with evidence.

{¶ 20} Bronczyk eventually signed a waiver of his right to a jury trial with respect to the NPC and RVO in Count 1 and the case proceeded. After the court denied his Crim.R. 29 motions for acquittal, the jury found Bronczyk guilty on all counts. The trial court also found him guilty on the NPC and RVO. The trial court subsequently imposed a total prison sentence of eight years for Bronczyk's convictions.

{¶ 21} Bronczyk presents the following six assignments of error in this appeal.

{¶ 22} "I.   The Appellant was denied his right of due process based upon ineffective assistance of counsel.

{¶ 23} "II.   The evidence was insufficient to sustain a finding of guilt because the state failed to present evidence to establish beyond a reasonable doubt the elements necessary to support the conviction [sic].

{¶ 24} "III.   Appellant's convictions were against the manifest weight of the evidence.

{¶ 25} "IV.   The trial court violated Appellant's constitutional right to remain silent when it permitted introduction of State's Exhibit 3.

{¶ 26} "V.   The trial court abused its discretion in sentencing Appellant to the maximum penalty without consideration of the overriding purposes of felony sentencing or the mandatory sentencing factors.

{¶ 27} "VI.   The trial court abused its discretion in sentencing Appellant to the maximum period of incarceration without

**articulating judicially reviewable reasons for imposition of the sentence."**

{¶ 28} Bronczyk argues in his first assignment of error that his trial counsel provided ineffective assistance for failing to file a motion to sever the counts of the indictment for trial. He contends the joinder of the two incidents for trial violated Evid.R. 404(B). This court disagrees.

{¶ 29} In order to successfully assert a constitutional claim of ineffective assistance of counsel, a defendant must show not only that his attorney made errors so serious that she was not functioning as "counsel," as guaranteed by the Sixth Amendment, but also that the deficient performance was so serious as to deprive defendant of a fair and reliable trial. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶ 30} Since there are many ways to provide effective assistance in any given case, judicial scrutiny of counsel's performance must be highly deferential, and there will be a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id.; see, also, *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 209 N.E.2d 164. Thus, counsel will not be deemed ineffective for failing to make futile motions.

*State v. Kirk*, Cuyahoga App. Nos. 95260 and 95261, 2011-Ohio-1687, ¶44, citing *State v. Leonard*, Cuyahoga App. No. 93496, 2010-Ohio-3601, ¶27.

{¶ 31} Crim.R. 8(A) allows for the joinder of multiple offenses in the same indictment "if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are *based on two or more acts* or transactions connected together or *constituting parts of a common scheme* or plan, or are part of a *course of criminal conduct.*" (Emphasis added.)

{¶ 32} Generally, the law favors joining multiple offenses in a single trial if the offenses are "of the same or similar character." *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293. A defendant who challenges joinder must demonstrate the joinder prejudiced his rights. Id.

{¶ 33} A defendant's claim of prejudicial joinder may be rebutted in two ways, viz., first, if in separate trials the state could introduce evidence of the joined offenses as "other acts" under Evid.R. 404(B), and, second, if the state can show that "evidence of each crime joined at trial is simple and direct." Id.; see, also, *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶198. "Thus, when simple and direct evidence exists, an accused is not prejudiced by joinder regardless of * * * Evid.R. 404(B)." *Lott* at 163.

{¶ 34} A review of the record in this case demonstrates joinder was proper because the offenses were of the same or a similar character and were part of the same course of criminal conduct. Each incident involved Bronczyk's attempt to burglarize a home in his neighborhood. Two straight-forward incidents occurred, the evidence involving each incident was simple and direct, and there is no indication from the record that the jury confused the evidence. *State v. Shabazz*, Cuyahoga App. Nos. 95567 and 95588, 2011-Ohio-2919, ¶31.

{¶ 35} Under these circumstances, Bronczyk cannot demonstrate trial counsel provided ineffective assistance by failing to challenge joinder of the offenses in the same indictment. *State v. Fannin*, Delaware App. No. 10CAA030028, 2011-Ohio-3211; see, also, *Kirk* at ¶45. Bronczyk's first assignment of error, accordingly, is overruled.

{¶ 36} In his second assignment of error, Bronczyk argues that the trial court erred in denying his motions for acquittal, because his convictions in Counts 1, 2, and 4[1] are not supported by sufficient evidence. This court agrees with his argument in part, and also finds plain error occurred with respect to his conviction on Count 6.

---

[1] Bronczyk presents no argument with respect to his convictions for possession of criminal tools and tampering with evidence.

{¶ 37} A motion for acquittal under Crim.R. 29(A) is governed by the same standard used for determining whether a verdict is supported by sufficient evidence. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶37. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * * ." Id.

{¶ 38} Bronczyk was convicted of several different offenses. Count 1 charged him with burglary, in violation of R.C. 2911.12(A)(2), which provides that "[n]o person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * * that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense," in this case, as charged in Count 2, theft.

{¶ 39} Bronczyk asserts the state provided insufficient evidence that he trespassed in Mueller's house with the purpose to commit a theft, because the evidence indicated Bronczyk actually did not take anything. However, the actual commission of the theft is immaterial; it is necessary only that the defendant had that purpose. *State v. Colegrove* (1998), 123 Ohio App.3d 565,

704 N.E.2d 645; see, also, *State v. Khomkalov*, Cuyahoga App. No. 94600, 2011-Ohio-327.

{¶ 40} Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value. *State v. Nicely* (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus.

{¶ 41} In this case, the police interrupted Bronczyk as he was backing out of a second-story window. Bronczyk lacked a legitimate reason for going into Mueller's house, provided a preposterous reason for his actions there, and appeared to leave inside near the window a box of valuables that he was unable to remove because the police surprised him. This evidence was sufficient to prove Bronczyk committed burglary and theft, as alleged in Counts 1 and 2. *Khomkalov*.

{¶ 42} However, the record reflects the state provided no evidence to prove either portion of the furthermore clause attached to Count 2. No one testified about Mueller's date of birth. Moreover, Mueller never provided his age, and stated he was at work when the incident occurred; therefore, he was

not retired. In addition, although Mueller testified some items of value to him had been placed into the box found by the window, he provided no dollar amount from which the jury could determine the cost of those items.

{¶ 43} Under these circumstances, Bronczyk's conviction for felony theft is based upon insufficient evidence. His conviction on Count 2, therefore, must be modified to first-degree misdemeanor theft. R.C. 2913.02(B)(2).

{¶ 44} The trial court acted appropriately in denying Bronczyk's motion for acquittal with respect to Count 4. Williams's testimony that Bronczyk was a stranger to her and that, after he entered her backyard, he tried to "get into the window of [her] children's bedroom" before he approached her door "with a screwdriver in his hand" constituted sufficient circumstantial evidence to establish the elements of attempted burglary. *State v. Carson*, Medina App. No. 10CA0094-M, 2011-Ohio-4989; *State v. Gibbs*, Cuyahoga App. No. 94349, 2011-Ohio-76.

{¶ 45} Although Bronczyk presents no argument with respect to his conviction on Count 6,[2] this court finds plain error occurred when the trial court denied Bronczyk's motion for acquittal on that count. Bronczyk was charged therein with violating R.C. 2921.12(A)(1), which states: "No person, knowing that an official proceeding or investigation is in progress, or is about

---

[2]See fn. 1.

to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

{¶ 46} According to O'Grady, as he approached Bronczyk's house he saw Bronczyk grab the side door handle, make "eye contact," and enter his home. After Bronczyk's arrest, O'Grady found a screwdriver on the driveway near the side door.

{¶ 47} O'Grady did not see Bronczyk either holding the tool, disposing of it, or even discarding it. According to O'Grady, the screwdriver lay in plain view and displayed nothing unusual; it was not even dirty. A police officer's testimony that he retrieved an obvious item, without more, is insufficient to prove the defendant committed the crime of tampering with evidence. *State v. Spears*, 178 Ohio App.3d 580, 2008-Ohio-5181, 899 N.E.2d 188; cf., *State v. Gosha*, Cuyahoga App. No. 95290, 2011-Ohio-2278 (citing cases in which the defendant "threw" the item during a chase). Consequently, Bronczyk's conviction for that offense is reversed.

{¶ 48} Bronczyk's second assignment of error, therefore, is overruled in part and sustained in part.

{¶ 49} Bronczyk argues in his third assignment of error that his convictions for burglary, theft, and attempted burglary are against the

manifest weight of the evidence. He bases this argument, in part, on Mueller's testimony that he "believed" Bronczyk's explanation for his presence on the roof, and Williams's admission that she did not know Bronczyk's reason for being at her house.

{¶ 50} In reviewing a claim challenging the manifest weight of the evidence, the appellate court determines whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶81. This court examines the entire record in order to determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. Id.

{¶ 51} The jury did not lose its way in evaluating the evidence presented in this case. *Carson*; *State v. Austin*, Lucas App. No. L-09-1011, 2009-Ohio-6258; *Gibbs*. Clearly, Mueller tried to withdraw his written statement to the police alleging Bronczyk committed burglary and theft because Bronczyk and his mother later elicited Mueller's sympathy.

{¶ 52} Moreover, although Bronczyk presented testimony indicating he had an innocent reason for entering Mueller's house, and, at the time Williams experienced the attempted break-in at her home, he was at home

helping his mother, Bronczyk's mother was hardly an objective witness. During her testimony, she not only prevaricated at times, but also contradicted herself at some points. The jury reasonably could determine she provided an unreliable account of her son's actions. Therefore, Bronczyk's convictions are supported by the manifest weight of the evidence.

{¶ 53} Accordingly, Bronczyk's third assignment of error is overruled.

{¶ 54} Bronczyk argues in his fourth assignment of error that the trial court violated his constitutional rights when it permitted the state to introduce into evidence a letter Mueller wrote on Bronczyk's behalf to an "Officer Roy." Bronczyk contends the letter allowed the jury to infer that he had a past history of criminal behavior.

{¶ 55} A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case; therefore, an appellate court's review of the trial court's decision is limited to whether the lower court abused its discretion. *State v. Finnerty* (1989), 45 Ohio St.3d 104, 107, 543 N.E.2d 1233; *Jenks* at 281. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Finnerty*.

{¶ 56} In this case, no abuse of discretion occurred, because the record reflects that "Officer Roy" was never identified. The state presented several Parma police officers as witnesses in this case. Although Bronczyk objected

to the letter on the basis that it was written to his probation officer, the jury could not have known that fact. Mueller acknowledged that he no longer desired to pursue criminal charges against Bronczyk for the July 15, 2010 incident. His letter simply reflected his change of heart.

{¶ 57} In light of the ambiguity of the identity of "Officer Roy," this court cannot find that the trial court either violated Bronczyk's constitutional rights or abused its discretion in admitting the letter into evidence. See, e.g., *State v. Brust* (June 26, 1992), Pike App. No. 478. Bronczyk's fourth assignment of error, accordingly, is overruled.

{¶ 58} Bronczyk's fifth and sixth assignments of error challenge his sentence. He contends that the trial court "failed to consider [either] the proportionality or the consistency of the sentence" when it imposed a "maximum" term upon him, and that the trial court failed to provide its reasons for choosing a "maximum sentence."

{¶ 59} This court previously has determined herein that Bronczyk's conviction for theft must be modified and his conviction for tampering with evidence is reversed. This disposition necessitates a remand of this case for resentencing consistent with the premise set forth by the Ohio Supreme Court in *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824; cf., *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381. To

the extent his contentions pertain to his other convictions, they lack merit for three reasons.

{¶ 60} First, Bronczyk did not receive a "maximum" sentence. The trial court stated it would not impose "any RVO time," and, in addition, imposed concurrent rather than consecutive terms for all of Bronczyk's convictions.

{¶ 61} Second, the record reflects the trial court considered the statutory guidelines before pronouncing sentence. Bronczyk did not raise the issue of proportionality either prior to or at the sentencing hearing; consequently, he waived the issue he presents in his fifth assignment of error. *State v. Gonzales*, Cuyahoga App. No. 96058, 2011-Ohio-4415, ¶20.

{¶ 62} Third, the trial court is not required to provide reasons for its decisions in sentencing. *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768. Nevertheless, the trial court noted that earlier "lenient" sentences had failed to deter Bronczyk's criminal behavior, and his victimization of his neighbors in this case warranted a stronger deterrent. This court cannot find the trial court abused its discretion under these circumstances. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.

{¶ 63} For the foregoing reasons, Bronczyk's fifth and sixth assignments of error are overruled.

{¶ 64} Bronczyk's convictions and sentences for burglary, attempted burglary, and possession of criminal tools are affirmed. His conviction for theft in Count 2 is modified, and his conviction for tampering with evidence in Count 6 is reversed and vacated. This case is remanded for resentencing consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR